[Nos. 32000-9-I; 35358-6-I.  Division One.  February 12, 1996.]

*In the Matter of the Personal Restraint of* LONNIE LEE BURTON, *Petitioner.*

*In the Matter of the Personal Restraint of* ALONZO WARREN, *Petitioner.*

*Eric Broman, Catherine L. Floit,* and *Nielsen & Acosta; Thomas M. Kummerow* and *Kathryn A. Russell* of *Washington Appellate Project,* for petitioners.

*Christine O. Gregoire, Attorney General,* and *Penelope S. Nerup* and *Mary E. Fairhurst, Assistants,* for respondent.

AGID, J. — Lonnie Burton and Alonzo Warren petition for relief from sanctions imposed as a result of prison disciplinary proceedings, arguing that those sanctions constitute an unlawful restraint within the meaning of RAP 16.4(c). They contend that the requirement that they show actual and substantial prejudice in order to maintain a personal restraint petition (PRP) in a prison disciplinary proceeding has been eliminated by the Washington Supreme Court's holding in *In re Cashaw*, 123 Wn.2d 138, 866 P.2d 8 (1994). We conclude that *Cashaw* does not apply to prison disciplinary proceedings. Because neither Burton nor Warren has shown that he sustained actual and substantial prejudice or that his minimal due process rights were violated as a result of the proceedings, we deny both of their PRPs.

## FACTS

### In re Burton

Lonnie Burton is a Washington state prisoner currently incarcerated at the Washington State Penitentiary where he is serving a sentence on several felony convictions. In 1998, he will begin serving a consecutive sentence for several other felony convictions. Burton was previously incarcerated at the Clallam Bay Corrections Center where the incident giving rise to the disciplinary proceeding he now challenges occurred.

On July 23, 1993, Burton approached inmate Ned Kelly while he was playing a game of Scrabble with another inmate. Officer Stephanie Mead, who was present and witnessed the incident that ensued, submitted the following report:

> On 7/23/93 at approximately 12:33 [p.m.], I observed Inmate Burton, Lonnie #978598 walk up to Inmate Kelly, Ned #967459, who was sitting at a dayroom table. Inmate Kelly was playing a game and Inmate Burton was leaning over the top of the game saying something. Inmate Kelly

jumped up and pointed his finger in Inmate Burton's face. Inmate Kelly then, with a closed fist, hit Inmate Burton in his upper body area.

Under the "Facts and Evidence Found" section, Mead added the following comment:

Was involved in a fight, which appears to have been instigated by comments made by this inmate.

Burton received an infraction for violating WAC 137-28-030(505), which prohibits fighting with any person except in self-defense.

At the disciplinary hearing held July 28, 1993, Burton pleaded not guilty and expressed his frustration at being charged with an infraction when he did not retaliate. The hearing officer explained that the reason he was charged with the infraction was that a confidential witness statement revealed that Burton had been badgering Kelly and touching the pieces of the Scrabble game in front of Kelly, that Kelly had warned Burton to leave but the badgering continued, and that Burton's comments to Kelly were what started the fight. Burton described his comments as follows:

All's I said was, make fire on the end of smoke. That's all I said to him . . . [S]lop was spelled and I told him to make fire. He just flew off the handle which really surprised me. That's all I said to him, was make fire . . . F-I-R-E. And slop was written. (inaudible). I said make fire. That's all I said to him. As God is my witness.[1]

Based on the evidence presented at the hearing, the hearing officer concluded that Burton had provoked Kelly and found Burton guilty of the infraction with which he had

---

[1] In his appeal to the prison superintendent, Burton described the events as follows:

The Report says that "Inmate Burton was leaning over the top of the game saying something." What I said to Inmate Kelley [sic], as he was playing Scrabble, was to play the word "fire" on the end of the word "slop", and started to move his tiles. That's *all* I did. That's when Kelley [sic] jumped into my face and told me to "get the Fuck away from me!" I refused and was punched in the face.

been charged. The sanctions imposed included five days' disciplinary segregation with credit for time served (over five days) and loss of 20 days' good time credit. The Clallam Bay Corrections Center superintendent upheld the hearing officer's finding of guilt and the sanctions imposed on appeal.

Burton later filed a personal restraint petition alleging that the sanctions constitute an unlawful restraint under RAP 16.4(c) because his right to due process of law was violated in the course of that proceeding.

## In re Warren

Alonzo Warren is currently incarcerated at the Clallam Bay Corrections Center where he is serving a sentence on his convictions for first degree rape and robbery, and second degree assault. Before his transfer, Warren was an inmate at McNeil Island Corrections Center, where he participated in a vocational food program taught by James Thompson. On May 17, 1994, Thompson submitted a written report to the Investigation/Intelligence Office stating that two weeks earlier he had been informed by an inmate that Warren had "threaten[ed] [inmate Thomas] Schneider and wanted some of his booty." The report also stated that when Thompson approached Warren the following morning and questioned him about the allegation, Warren responded that he was only joking and meant no harm. Warren was placed in administrative segregation pending investigation of the allegation. Schneider alleged that Warren had placed a homemade knife against his throat, forced him into the bathroom of the staff dining room, and demanded that Schneider have sex with him. Another inmate, Jason Davis, received an infraction for allegedly acting as lookout at the bathroom door. The allegations

were contained in a confidential investigative report prepared by Investigator James Cooper, which included witness statements from Warren, Davis, Schneider, Thompson, and two confidential informants.

The serious infraction report against Warren delineated the following charges: (1) refusing to obey a lawful order of any staff member in violation of WAC 137-28-025(103); (2) engaging in sexual acts with others except pursuant to authorized conjugal visits in violation of WAC 137-28-030(504); (3) attempting to commit a serious infraction under WAC 137-28-030, considered the same as the commission of the offense itself under WAC 137-28-030(700); (4) threatening another with bodily harm or an offense against his person in violation of WAC 137-28-030(506); (5) strong-arming or use of force or coercion for personal gain against any inmate or staff person in violation of WAC 137-28-030(663); and (6) assault that does not result in hospitalization in violation of WAC 137-28-030(704).

There was a disciplinary hearing on May 25, 1994. Investigator Cooper was present, as Warren had requested. Warren denied committing the infractions. He explained that on May 16, 1994, he and Schneider engaged in a "verbal argument" in which Warren demanded to know why Schneider had been following him around all week. Schneider responded with a "few smart remarks." Thompson and all the class participants were present during the argument. Warren insisted that this was all that happened and specifically denied any "horseplaying" or joking around which could have been misconstrued by Schneider. Warren also submitted an unsigned, undated statement purportedly provided by Schneider which stated:

> The incident in the kitchen area with inmate Warren was know [sic] more then [sic] a verbal argument.
>
> inmate 710218<br>Schnieder [sic]

When the hearing officer asked Warren if he had any ques-

tions for Investigator Cooper, Warren expressed his frustration that Cooper believed Warren guilty but otherwise asked no questions of Cooper.

Warren was found guilty of all infractions. The hearing officer discounted the statement purportedly provided by Schneider because it

> came out of no where, was not signed, was undated, and it would have been virtually impossible for Warren to obtain this document from Schneider because Warren was in administrative segregation (24-hour lock up). Additionally, the [hearings clerk] had furnished Schneider with a witness statement prior to the hearing and Schneider indicated to him that he did not want to fill one out.

Schneider's name was also misspelled on the document. The hearing officer further noted that Cooper's investigative report was very thorough and explicit and that the witness statements provided by Schneider, Thompson, and two confidential informants were all consistent. He also considered Warren's statement to Thompson that he was "joking and meant no harm," noting that "Warren did not deny his actions in any way, in fact, I viewed his comment to Thompson as an admission."

Based on the evidence presented at the hearing, the hearing officer found Warren guilty of all the infractions with which he was charged. The sanctions imposed included 30 days' disciplinary segregation with credit for nine days served and loss of 180 days' good time credit. The hearing officer explained:

> Because Warren had multiple infractions, the maximum sanction he could receive was based upon the most serious infraction.
>
> . . . The most serious infraction received by Warren was a 504 (engaging in sexual acts with others) which was read together with a 700 (attempting to commit or aiding another to commit a serious infraction). In other words, the evidence established that, although a sexual act did not occur, Warren "attempted" to forcefully commit a sexual act by holding a knife to Schneider's throat and demanding sex.

The McNeil Island Corrections Center superintendent upheld both the hearing officer's findings of guilt and the sanctions imposed on appeal.

Warren then filed a PRP alleging that the sanctions imposed as a result of the disciplinary proceeding constitute an unlawful restraint under RAP 16.4(c) because his right to procedural due process was violated in the course of those proceedings. This matter was linked with *In re Burton* and referred to a panel for determination on the merits pursuant to RAP 16.11(b). In response to direction from this court, counsel for both parties submitted supplemental briefing addressing each petitioner's claims in light of *In re Cashaw*, 123 Wn.2d 138, 866 P.2d 8 (1994), and *In re Shepard*, 127 Wn.2d 185, 898 P.2d 828 (1995).

## DISCUSSION

### Standard of Review

Both of these cases raise as a preliminary issue the question whether *Cashaw* applies in the context of cases involving prison disciplinary proceedings. In *Cashaw*, the Washington Supreme Court held that Cashaw did not need to establish the threshold requirement that he show "actual and substantial prejudice" in connection with his claim that a parolability hearing had resulted in his unlawful restraint.[2] 123 Wn.2d at 148. The Court reasoned that the policy interests underlying the threshold requirements—and particularly the principle of finality of litigation which it described as the most important of these policy concerns—do not justify imposing the threshold requirement that a petitioner show actual and substantial prejudice when the challenge is to a decision from which the inmate has not had a previous or alternative avenue

---

[2]The threshold requirement for a PRP alleging constitutional error requires the petitioner to show " 'actual and substantial prejudice,' " while a PRP alleging nonconstitutional error must show " 'a fundamental defect which inherently results in a complete miscarriage of justice.' " *Cashaw*, 123 Wn.2d at 148 (quoting *In re Cook*, 114 Wn.2d 802, 810, 812, 792 P.2d 506 (1990)).

for obtaining state judicial review.[3] 123 Wn.2d at 148-49. In evaluating Cashaw's PRP, therefore, the Court asked only whether the requirements of RAP 16.4 had been met. 123 Wn.2d at 149. The Court concluded that Cashaw had successfully shown that his restraint was unlawful as required by RAP 16.4(c) because it was accomplished in violation of Indeterminate Sentence Review Board (ISRB) regulations.

Prison disciplinary proceedings also result in decisions "from which the inmate generally has had no previous or alternative avenue for obtaining state judicial review." *See* 123 Wn.2d at 149. Thus, we must decide whether *Cashaw* applies to make a showing of actual and substantial prejudice unnecessary in this context as well or whether the case is limited to parolability hearings like the one at issue there. Neither *Cashaw* nor *Shepard*, the only Supreme Court case applying *Cashaw* to date, addressed or considered the question whether the Supreme Court intended that the *Cashaw* holding apply in the context of prison disciplinary proceedings. *See Shepard*, 127 Wn.2d at 191 (citing *Cashaw*, 123 Wn.2d at 148-49, for the specific proposition that "[a]n inmate who challenges a decision concerning parole need not meet [the] threshold standards").

We conclude that the Supreme Court did not intend *Cashaw* to apply to prison disciplinary proceedings because that decision is in direct conflict with the line of recent Supreme Court decisions which have directly addressed what standard of review applies to prison disciplinary actions. *See, e.g., In re Anderson*, 112 Wn.2d 546, 772 P.2d 510, *cert. denied*, 493 U.S. 1004 (1989); *In re Johnston*, 109 Wn.2d 493, 745 P.2d 864 (1987); *In re Reismiller*, 101 Wn.2d 291, 678 P.2d 323 (1984); *Dawson v. Hearing Comm., Wash. State Penitentiary*, 92 Wn.2d 391, 597 P.2d 1353 (1979). Nothing in *Cashaw* even alludes to overruling this

---

[3]The Court also noted that collateral review "degrades the prominence of trial" and " ' . . . sometimes costs society the right to punish admitted offenders.' " *Cashaw*, 123 Wn.2d at 148 (quoting *Cook*, 114 Wn.2d at 809).

line of cases, nor is that consequence in any way acknowledged or considered. Where the literal words of a court opinion appear to control an issue but the court did not in fact address or consider the issue, the ruling is not dispositive and may be reexamined without violating stare decisis in the same court or an intermediate appellate court's duty to accept the ruling of the Supreme Court. *ETCO, Inc. v. Department of Labor & Indus.*, 66 Wn. App. 302, 307, 831 P.2d 1133 (1992) (cited with approval in *Kish v. Insurance Co. of N. Am.*, 125 Wn.2d 164, 172, 883 P.2d 308 (1994) (broad language used by a court which did not address or consider an issue directly is not binding precedent)); *In re Consolidated Cases Concerning the Registration of Elec. Lightwave, Inc.*, 123 Wn.2d 530, 541, 869 P.2d 1045 (1994).

In *Reismiller*, the Supreme Court expressly considered and decided what standard of review applies when an inmate challenges prison disciplinary proceedings in a PRP. The Court held that review of prison disciplinary proceedings is limited to determining whether the action taken was so arbitrary and capricious as to deny the petitioner a fundamentally fair hearing. *Reismiller*, 101 Wn.2d at 294. It reasoned that a broader scope of review is undesirable because it would tend to undermine prison administrators' decisions and lead to greater involvement by the courts in matters of internal prison discipline. *Reismiller*, 101 Wn.2d at 294 (citing *Dawson*, 92 Wn.2d at 398). The Court specifically noted the unique " '. . . nature of the prison setting and the needs of prison administrators to determine discipline matters fairly and swiftly, while preserving calm and order within the institution . . .'." *Reismiller*, 101 Wn.2d at 293 (quoting *Dawson*, 92 Wn.2d at 395-96). It also observed that a "prison is 'a tightly controlled environment populated by persons who have chosen to violate the criminal law, many of whom have employed violence to achieve their ends.' " *Reismiller*, 101 Wn.2d at 294 (quoting *Dawson*, 92 Wn.2d at 396). Although,

"a limited number of procedural safeguards must be afforded

when a prison resident is subject to discipline for 'serious misconduct' which may deprive him of a liberty interest[," *Dawson*, at 397,] prisoners "are not . . . entitled to the full panoply of rights due a defendant in a criminal proceeding, but rather such process as is appropriate in the circumstances." *In re Young*, 95 Wn.2d 216, 220, 622 P.2d 373 (1980).

*Reismiller*, 101 Wn.2d at 294. "The safeguards required to ensure due process must be evaluated in light of the legitimate institutional need to assure the safety of inmates, avoid burdensome administrative requirements that might be susceptible to manipulation, and preserve the disciplinary process as a means of rehabilitation." *Johnston*, 109 Wn.2d at 497 (citing *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 454-55, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985)). For this reason, the Court specifically distinguished between parole revocation hearings and the kind of proceeding challenged here:

> A lesser standard of due process is required in disciplinary proceedings when a prisoner is already incarcerated rather than on probation or parole. Not only is the sanction in prison disciplinary hearings "qualitatively and quantitatively different from the revocation of parole or probation" but the State also has a far different stake in prison disciplinary hearings . . .

*Reismiller*, 101 Wn.2d at 295 (quoting *Arment v. Henry*, 98 Wn.2d 775, 778, 658 P.2d 663 (1983)).

In light of the Supreme Court's strong policy reasons applying a very limited standard of review to prison disciplinary proceedings and the absence in *Cashaw* of any expressed intent to abandon those express policy considerations or the rationale of *Reismiller,* we conclude that the Court did not intend that *Cashaw* be broadly construed to overrule merely by implication the line of cases in which it directly addressed the issue. That all the cases the Supreme Court cites as consistent with its holding in *Cashaw* involved ISRB determinations and not prison disciplinary hearings such as those here further supports this conclusion. *See Cashaw*, 123 Wn.2d at 149.

In addition, *Cashaw* should not apply to prison disciplinary hearings because they are different from parolability hearings such as those at issue in *Cashaw* and *Shepard* in several other ways. First, prison disciplinary proceedings are far more numerous than parolability hearings. In 1979, when it decided *Dawson*, the Supreme Court noted that "it may safely be estimated that more than 5,000 prison disciplinary hearings take place each year in Washington adult correction institutions." *Dawson*, 92 Wn.2d at 398. If anything, the number of such hearings is likely to have risen in the 16 years that have passed since *Dawson* was handed down. Second, unlike the ISRB, the Department of Corrections is responsible for the day-to-day management of Washington prisons. As noted above, the Supreme Court has clearly acknowledged prison administrators' need to determine discipline matters fairly and swiftly in order to maintain order and control in the prison environment. *Dawson*, 92 Wn.2d at 395-96. In contrast to parolability hearings where the interest in finality is substantially less compelling, the need for rapid resolution and finality is a critical factor in the context of prison disciplinary proceedings. Finally, inmates have the right to appeal prison disciplinary decisions to the prison superintendent and, if a sanction from which the inmate loses more than 180 future good time credits is imposed, to the director of the Division of Prisons. Thus, unlike parolees, inmates challenging prison disciplinary decisions do have other avenues of appeal.[4] *See* WAC 137-28-115, WAC 137-95-280.

In summary, all indications are that the Supreme Court did not intend *Cashaw* to overrule by implication the line of cases specifically addressing the standard of review to apply to prison disciplinary proceedings or to override the strong policy reasons underlying those decisions. When coupled with the distinctions between those proceedings

---

[4]We note that both Warren and Burton initially appealed to their respective prison superintendents. Because neither sanction involved the loss of *more* than 180 days' future good time credits, neither was required to appeal to the director of the Division of Prisons prior to filing his petition in this court.

and parolability hearings, we conclude that *Cashaw* did not eliminate the requirement that a petitioner show actual and substantial prejudice in order to maintain a PRP challenging a prison disciplinary action.

## In re Burton

Before a PRP alleging constitutional error arising from a prison disciplinary hearing will be granted, the petitioner must demonstrate both that he is presently restrained due to constitutional error and that the error worked to his actual and substantial prejudice. *Reismiller*, 101 Wn.2d at 293 (citing *In re Lile*, 100 Wn.2d 224, 225, 668 P.2d 581 (1983)). A prison disciplinary action is reviewable only if it was so arbitrary and capricious that it denied the inmate a fundamentally fair hearing. *Anderson*, 112 Wn.2d at 549 (citing *Reismiller*, 101 Wn.2d at 294). It is not arbitrary and capricious if the petitioner was afforded the minimum due process protections applicable in prison disciplinary proceedings. *See Reismiller*, 101 Wn.2d at 294. Those due process requirements are met when the inmate: (1) receives notice of the alleged violation; (2) is provided an opportunity to present documentary evidence and call witnesses when not unduly hazardous to institutional safety and correctional goals; and (3) receives a written statement of the evidence relied on and the reasons for the disciplinary action. *Dawson*, 92 Wn.2d at 397 (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-66, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)). Judicial review of mere procedural irregularities is inappropriate and disrupts the prison disciplinary process because it would have a "substantial adverse effect on the rehabilitative function" and "tend to be counterproductive and disruptive of the institutions' goals." *Dawson*, 92 Wn.2d at 397; *In re Plunkett*, 57 Wn. App. 230, 236-37, 788 P.2d 1090 (1990) (whether prison disciplinary action is arbitrary and capricious depends not on whether a hearings officer followed technical hearing procedures but rather on whether the petitioner was afforded the minimum due process protections applicable in prison disciplinary proceedings).

Burton argues that his right to due process of law was violated in the course of the prison disciplinary hearing in his case when: (1) he was denied the right to call and question witnesses; (2) the hearing officer did not base her decision solely on the evidence presented at the hearing; and (3) the infraction was not supported by the evidence. Burton fails to allege in his personal restraint petition that he sustained any prejudice. Although he does allege prejudice in his subsequent briefing, for the reasons stated below, Burton does not meet his burden of showing that he sustained "actual and substantial prejudice" as a result of constitutional error. *See Reismiller,* 101 Wn.2d at 293.

Burton first contends that his due process right to a fundamentally fair hearing was violated when the reporting staff member was not present. Contrary to the State's assertion that Burton did not request her presence, Burton correctly points out that he did check the box on the relevant form requesting her presence. But WAC 137-28-085(2)(d) and WAC 137-28-090(9) provide for exceptions to the general rule that such witnesses be present if the information to be presented by the witness would be duplicative or is unnecessary to the adequate presentation of the inmate's case. Officer Mead's testimony would, at best, have duplicated her written statement. She could not have provided the exculpatory evidence Burton argues she would have been able to provide, i.e., that he never hit anyone, because there was no allegation that Burton ever hit anyone.

■ An inmate's due process rights in prison disciplinary hearings do not include the right to cross-examine or to confront witnesses. *See Dawson,* 92 Wn.2d at 397; *Plunkett,* 57 Wn. App. at 235. Rather, the minimal due process rights afforded an inmate in prison disciplinary proceedings include the opportunity to be heard, which includes the right to present evidence and argument in contested matters. *Plunkett,* 57 Wn. App. at 235. The fact that Burton did not hit Kelly was not disputed, and Burton was afforded an opportunity to present evidence and argument

on the issues that were disputed and his version of the events. Burton's contention that he raised the issue of Officer Mead's absence at the hearing and that the hearing officer replied, "So you did, that's my mistake" is not supported by the transcript of those proceedings included in the record. In short, there is no basis for concluding that Burton sustained any prejudice as a result of Officer Mead's absence from the hearing.

■ Burton also argues that his infraction was not supported by substantial evidence because WAC 137-28-030(505) prohibits only fighting itself, not provoking or instigating a fight, and there is no evidence that Burton ever hit anyone. But even under the definition of "fight" taken from *Black's Law Dictionary* 565 (5th ed. 1979) on which Burton relies, "fight" includes hostile verbal encounters. The hearing officer clearly concluded that Burton's verbal interaction with Kelly was a fight because it was hostile in nature, and the evidence supports that conclusion. Accordingly, we reject Burton's substantial evidence argument.

■ Burton further contends that the hearing officer did not base her decision solely on the evidence presented at the hearing as required by WAC 137-28-093(2). The evidentiary requirements of due process are satisfied if there is "some evidence" in the record to support a prison disciplinary decision revoking good time credits. *Johnston*, 109 Wn.2d at 497. The "some evidence" or "any evidence" standard also applies when evaluating the legality of a prison disciplinary decision which imposes as a sanction isolation or mandatory segregation time. *Reismiller*, 101 Wn.2d at 292, 295-96.

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board. We decline to adopt a more stringent evidentiary standard as a constitutional requirement.

*Johnston,* 109 Wn.2d at 497 (quoting *Superintendent,* 472 U.S. at 455-56). A prison disciplinary hearing is arbitrary and capricious only if no evidence supports the action taken. *Anderson,* 112 Wn.2d at 549.

Here, Officer Mead's observations contained in her written report that Burton's comments provoked the altercation with Kelly were consistent both with the statement of the confidential witness and Burton's own admission that he approached Kelly while he was playing Scrabble and attempted to interject himself into the game. When all three accounts are taken together, this evidence is sufficient to meet the requirement that there be "some evidence" or "any evidence" to support a disciplinary decision. *See Johnston,* 109 Wn.2d at 497.

■ Finally, Burton raises two additional issues in his supplemental briefing which he did not raise in his petition. He first contends that the hearing officer violated WAC 137-28-090(11) by relying on confidential statements without first determining whether the statements were credible. WAC 137-28-090(11) does not, however, incorporate any requirement that a credibility determination be made on the record. Moreover, WAC 137-28-090(11) is concerned not with confidential witness statements but with anonymous witnesses whom the reporting staff member refuses to identify to the hearing officer. In the absence of any evidence that the hearing officer considered statements by anonymous witnesses, there is no basis for concluding that WAC 137-28-090(11) was violated.

■ Burton also contends that the Department of Corrections violated WAC 137-28-085(2)(f) when it failed to provide him with a written summary of the confidential witness statements. First, WAC 137-28-085(2)(f) suggests, but does not explicitly require, that any such summary be written. Second, Burton was informed of the content of the confidential witness statement on which the hearing officer relied during the disciplinary hearing. That statement was consistent with the information he knew had already been provided by Officer Mead, i.e., that comments he made to Kelly while Kelly was playing Scrabble had

provoked an altercation. Burton's defense, in fact, focused on precisely this issue. The failure to provide Burton with a written summary of the confidential statement, therefore, clearly did not prejudice Burton or deny him a fundamentally fair proceeding. *See Reismiller*, 101 Wn.2d at 294, 297. Burton does not dispute that he received advance written notice of the charges sufficient to comport with the minimal due process requirements to which he is entitled. *See Dawson*, 92 Wn.2d at 397.

Because Burton has not shown that any procedural irregularities which occurred caused him actual and substantial prejudice and because the proceedings did not violate Burton's minimal due process rights, we deny his PRP.

## In re Warren

■ Warren first argues that his right to due process of law was violated because the infraction report failed to comply with WAC 137-28-045.[5] WAC 137-28-045 provides that a serious infraction report must include a description of the event, the time and place of the incident, the names of the witnesses, the specific rule allegedly violated, and a description of and recommendation for any action to be taken. Because the infraction report issued to Warren alleged only that the violations occurred "two or three weeks ago, at about 1000 [hours] on an unspecified date" and fails to identify a specific date, Warren contends that he was unable to prepare an adequate defense.[6] While the infraction report did not include a specific date, however,

---

[5]Warren also argues that his right to equal protection under the law was violated because he was not charged with an infraction for possession of a weapon in violation of WAC 137- 28-030(602) instead of the infractions with which he was charged. The rule of lenity on which he relies, however, does not apply in this context. *See State v. Mason*, 31 Wn. App. 680, 686-87, 644 P.2d 710 (1982) (the rule of lenity applies when a penal statute is ambiguous as to whether the Legislature intended to impose multiple punishment for a single offense).

[6]Warren also challenges the absence of a description and recommendation for any action to be taken but fails to allege or show how he was prejudiced as a result. Bare assertions and conclusory allegations are not sufficient to require judicial consideration and discussion in a PRP. *In re Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992).

the time and place of the alleged event were stated with sufficient specificity to permit Warren to be fully informed of and defend against the allegations against him. Warren contended that only one interaction with Schneider had occurred in the kitchen area and himself provided the date of that interaction. His defense, which he supported with evidence consisting of his own testimony and a written statement purportedly provided by the alleged victim, was that the interaction consisted of no more than a verbal altercation. Warren specifically denied that any other interaction occurred. The infraction report was clearly sufficient to inform him of the basis for the allegations against him so as to allow him to fully respond to the infractions with which he was charged. *See Dawson*, 92 Wn.2d at 397.

Warren next contends that he was denied his right to confront witnesses at the disciplinary hearing because he did not have an opportunity to question Investigator Cooper. First, as noted above, an inmate's due process rights do not include the right to confront or cross-examine witnesses. *See Plunkett*, 57 Wn. App. at 235. Second, Investigator Cooper did attend the hearing and the hearing officer specifically asked Warren if he had any questions for Cooper. While Warren responded to that invitation by expressing his frustration that Cooper thought him guilty, he otherwise had no questions for Cooper. Warren was also not denied the right to call other witnesses. Witness statements were submitted to several inmates Warren had identified as potential witnesses. Of these, only one chose to complete and return the form. That statement was included in the evidence submitted by Warren at the disciplinary hearing. This was sufficient to comply with the requirements of due process in this context because they do not include the right of compulsory process. *See Dawson*, 92 Wn.2d at 397; *Plunkett*, 57 Wn. App. at 235.

Warren also contends that the infractions against him were not supported by sufficient evidence. He argues that

because he submitted a statement purportedly written by Schneider stating that the incident in the kitchen was no more than a verbal altercation, "there was not even a modicum of evidence" that Warren attempted to engage in a sexual act. The hearing officer, however, expressly discounted that statement because it was not dated, was not signed by Schneider, and would have been virtually impossible to obtain because Warren was in administrative segregation and had no contact with Schneider at the time. The hearing officer found the witness statements included in the confidential report more credible because they were all consistent and because Warren had in effect admitted the allegation by stating that he was only joking and meant no harm when he was first questioned. When the statement purportedly provided by Schneider is discounted, the remaining evidence is sufficient to meet the "some evidence" standard that applies in the context of prison disciplinary hearings. *See Johnston*, 109 Wn.2d at 497. Warren's contention that the hearing officer considered evidence that was not introduced at his disciplinary hearing in violation of WAC 137-28-093(2) is simply not supported by the transcript of the hearing which is included in the record.

Finally, like Burton, Warren also raises several new alleged procedural violations in his supplemental briefing. He, too, alleges that the hearing officer violated WAC 137-28-090(11) by failing to make an independent determination of the reliability of the confidential informants' statements and that he was not provided written summaries of the confidential statements in violation of WAC 137-28-085(2)(f). First, as noted above, there is no requirement that such determinations be made on the record and, in any event, WAC 137-28-090(11) references not confidential but anonymous witnesses. Second, the hearing officer did in fact consider the credibility of the confidential witness statements on the record, noting in particular that they were all consistent. While Warren was not provided individual summaries of the confidential statements, the

infraction report incorporated all the critical facts alleged in those statements which formed the basis for the infractions with which Warren was charged. The notice Warren got was thus sufficient to permit him to fully defend against the infractions and complied with the minimal due process protections to which he is entitled. Because Warren has not shown that any procedural irregularities which occurred caused him actual and substantial prejudice and because the proceedings did not violate Warren's due process rights, Warren's PRP is also denied.

We deny both Burton's and Warren's personal restraint petitions.

KENNEDY, A.C.J., and GROSSE, J., concur.

After modification, further reconsideration denied March 19, 1996.