[No. 45490-1-I. Division One. August 20, 2001.]

*In the Matter of the Personal Restraint of* S.J. KRIER,
*Petitioner.*

32

*S.J. Krier*, pro se.

*Christopher Gibson* (of *Nielsen, Broman & Associates, P.L.L.C.*), for petitioner.

*Christine O. Gregoire, Attorney General*, and *Michael G. Ballnik, John S. Blonien*, and *Wm. Andrew Myers, Assistants*, for respondent.

KENNEDY, J. — Due process requires fair notice of what conduct is prohibited before an inmate charged with a serious infraction can be deprived of good time in a prison disciplinary proceeding. Where an inmate claims lack of fair notice and is nevertheless found guilty of committing a serious infraction, "some evidence" in the record of the hearing must support a finding that the inmate did receive fair notice of the prohibited conduct, despite his protests to the contrary. Where such evidence cannot be found in the record, it cannot be supplied post hoc, during judicial review. Accordingly, we grant S.J. Krier's personal restraint petition, vacate the hearing officer's finding that Krier committed a serious infraction on April 11, 1999, and remand with instructions that Krier's forfeited good time be restored.

## FACTS

On March 28, 1999, Corrections Officer David Tworzydlo observed inmate S.J. Krier smoking in his cell. Officer Tworzydlo prepared a general infraction report alleging that Krier had violated WAC 137-28-220(1)(251) (smoking

in a prohibited area) and WAC 137-28-103 (refusing to obey a staff member). Krier was notified that an infraction hearing would occur on March 31, 1999. The hearing took place as scheduled; however, Krier did not attend the hearing.[1]

Sergeant Rodian Salinas conducted the general infraction hearing in Krier's absence, reviewed Officer Tworzydlo's general infraction report, found Krier guilty on the basis of the report, and imposed a sanction of 10 days of cell confinement, starting at 6 A.M. on April 2, 1999, and ending at 6 A.M. on April 12, 1999.

On April 11, 1999, Officer Tworzydlo performed a routine tier check and noticed that Krier was not in his cell. Tworzydlo issued an initial serious infraction report charging Krier with a serious infraction for "[f]ailing to comply with any administrative or posthearing sanction imposed for committing any general or serious infraction" contrary to WAC 137-28-260(1)(658) and with a general infraction for "[r]efusing or failing to obey an order, oral or written, of any staff member" contrary to WAC 137-28-220(1)(103). Krier pleaded not guilty to both charges, and the matter proceeded to a hearing before Lieutenant Lonny Earles on April 14, 1999. Krier attended the hearing and claimed that he had never been notified that he was on cell confinement as a result of the previous general infraction, consequently it would be unfair to convict him of the serious infraction. Lieutenant Earles found Krier guilty of the violations, based on the written report of Corrections Officer Tworzydlo and a copy of the March 31 general infraction report imposing the cell-confinement sanction. Lieutenant Earles made no written finding regarding Krier's claim that he had never been notified of the cell-confinement sanction.

A general infraction report serves as both a charging document and a disposition document. The charge is filled

---

[1] Krier claims that his failure to attend the hearing was not his fault but rather the fault of the corrections officers who failed to open his cell door so he could get out. We will not go into this allegation as it has no effect on our ruling—which would be the same whether Krier failed to attend voluntarily or otherwise.

in at the top and signed by the reporting officer and by an additional reviewing staff member. At midpage is a section notifying the inmate of the date, time and place of the hearing, and there is a space for the inmate to sign, acknowledging that he has received a copy of the document. Krier signed this acknowledgment on March 29, 1999. The lower portion of the page contains an "Action" section that the hearing officer fills in at the time of the hearing. This section has lines for the date and time of the hearing, the inmate's plea to the charge(s), a summary of the inmate's statement, if any (the report before us indicates that the matter was heard in Krier's absence), the hearing officer's findings, and the sanction imposed. Below that is a notification to the inmate that any appeal must be addressed to the Disciplinary Hearing Officer within 24 hours and the inmate is asked: "Do you wish to appeal the above decision and/or sanction? Yes__ No__ [.]" Neither response is checked off on Krier's report. The report also states, "Notification has been received[,]" followed by a signature line for the inmate and a staff witness, and a place to indicate the date and time of the notification. This portion of Krier's report is also blank. Finally, the document contains instructions for distribution of various copies: The original goes to the unit file, the pink copy goes to the inmate when he is notified of the date and time of the hearing, and, after the hearing has taken place, the yellow copy goes "to inmate after review has been conducted and signature obtained." The inmate is instructed to attach his yellow copy to his appeal.

After reviewing the initial serious infraction report and the general infraction report above described, Lieutenant Earles found Krier guilty of both charges, and imposed sanctions forfeiting 10 days of Krier's good time and giving him 10 days of disciplinary segregation.

Krier appealed the serious infraction sanction to the prison superintendent, who denied the appeal, and who responded to Krier's claim that he had not received notice of the cell-confinement sanction with the following: "Copy of infraction delivered in unit mail." Krier subsequently filed

the personal restraint petition that is now before us.

In response to the personal restraint petition, the Department of Corrections (Department) submitted affidavits signed by Sergeant Salinas, the hearing officer for the March 31 general infraction, and Lieutenant Earles, the hearing officer for the serious infraction. Sergeant Salinas stated in his affidavit that although he has no recollection of the specific general infraction hearing,[2] immediately after conducting an informal disciplinary hearing in the absence of the inmate, he writes his findings and the sanctions imposed on the general infraction report, and sends a copy to the absent inmate via unit mail. According to Officer Salinas, a document placed in unit mail during the day is delivered to the inmate that same evening. When an inmate is sanctioned with the loss of privileges, such as cell confinement for a period of time, this information is recorded in the unit sergeant's office so that all staff members on duty in the unit can become aware of the loss of privileges.

Lieutenant Earles stated in his affidavit that although he has no recollection of the specific details of the serious infraction hearing held on April 14, 1999, he has an intimate knowledge of the prison disciplinary process and was aware on the date of the hearing that after a unit sergeant conducts an informal disciplinary hearing for a general infraction in the absence of the inmate, the sergeant indicates his findings and any sanctions on the general infraction report, which is then provided to the inmate by unit mail. Lieutenant Earles added that "unit mail is a safe, reliable, and efficient means of notifying inmates of disciplinary sanctions imposed[.]" According to Lieutenant Earles, unit mail is never delivered to the wrong inmate.

After this court ruled that Krier's personal restraint petition was not frivolous on its face and appointed counsel

---

[2] Sergeant Salinas's affidavit states that he conducted the general infraction hearing on March 29, 1999, but it is clear from the record as a whole that the hearing was actually held on March 31, 1999.

to represent him, we requested counsel for both parties to respond to the following inquiries by way of supplemental briefing: (1) May this court consider evidence that was not presented to the hearing officer who found Krier guilty of the serious infraction; and (2) if so, is the affidavit of Sergeant Salinas "some evidence" that Krier was given actual notice of the sanctions imposed by Sergeant Salinas as a result of the general infraction hearing.[3]

## DISCUSSION[4]

*Standard of Review of Personal Restraint Petitions*

In order to obtain relief, a personal restraint petitioner must show that he is under restraint within the meaning of RAP 16.4(b), which provides in part:

> A petitioner is under a "restraint" if the petitioner has limited freedom because of a court decision in a civil or criminal proceeding, the petitioner is confined, the petitioner is subject to imminent confinement, or the petitioner is under some other disability resulting from a judgment or sentence in a criminal case.

It is undisputed that Krier is under a restraint as a result of the serious infraction decision because he lost 10 days of good time credits.

Krier is entitled to relief from the restraint arising out of the serious infraction hearing if he can prove actual and substantial prejudice as a result of constitutional error

---

[3] The court made this inquiry when only Sergeant Salinas's affidavit was filed. Lieutenant Earles' affidavit was received later, as part of the Department's response to our inquiries.

The term "some evidence" which we use a number of times in this opinion is one of art. Its significance with respect to judicial review of personal restraint petitions is made clear in *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985). The meaning of the term is not at issue in this case, accordingly, we have not discussed its historical underpinnings.

[4] Krier raised an additional claim for relief in his May 1, 2000 Reply Brief. Krier challenged his finding of guilt on a serious infraction charge of sexual harassment against a correction officer, in violation of WAC 137-28-260(1)(659), when Krier told the officer to "stick the infraction report up her cunt." Reply Br. at 15. We summarily deny this claim. Not only was it raised for the first time in a reply brief contrary to RAP 10.3(a)(5), but also Krier's claim that his statement was not sexual in nature is frivolous on its face.

or, if he can prove nonconstitutional error that inherently results in a "complete miscarriage of justice." *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990); *In re Pers. Restraint of Reismiller*, 101 Wn.2d 291, 293, 678 P.2d 323 (1984). *See also* RAP 16.4(c)(5) (a petitioner's restraint is unlawful if the conditions or manner of the restraint are in violation of the Constitution of the United States or this state, or in violation of the laws of this state).[5]

■ In reviewing prison disciplinary proceedings, this court determines whether the action taken was "so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding." *Reismiller*, 101 Wn.2d at 294; *In re Pers. Restraint of Burton*, 80 Wn. App. 573, 582, 910 P.2d 1295 (1996). Action is so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding if the petitioner is not afforded the minimum due process protections applicable in prison disciplinary hearings or if the decision is not supported by at least some evidence. *In re Pers. Restraint of Anderson*, 112 Wn.2d 546, 548-49, 772 P.2d 510 (1989); *Burton*, 80 Wn. App. at 585.

■ Due process requires that an inmate facing a prison disciplinary hearing: "(1) receive notice of the alleged violation; (2) be provided an opportunity to present documentary evidence and call witnesses when not unduly hazardous to institutional safety and correctional goals; and (3) receive a written statement of the evidence relied upon and the reasons for the disciplinary action." *In re Pers. Restraint of Gronquist*, 138 Wn.2d 388, 396-97, 978 P.2d 1083, *cert. denied*, 528 U.S. 1009 (1999).

Krier argues, citing *Reismiller*, 101 Wn.2d at 294, that his petition satisfies the substantial-prejudice-from-constitutional-error standard because due process also requires that he cannot be punished for conduct he did not know was

---

[5] Krier, in his pro se capacity rather than through appointed counsel, erroneously contends that he need not show actual and substantial prejudice, citing *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 866 P.2d 8 (1994). We rejected this same premise in *In re Pers. Restraint of Burton*, 80 Wn. App. 573, 581-82, 910 P.2d 1295 (1996) (concluding that the Supreme Court did not intend *Cashaw* to apply in prison disciplinary proceedings).

prohibited, and that the disciplinary action was arbitrary and capricious because no evidence in the record of the hearing contradicts Krier's claim of lack of notice of the cell confinement, and no evidence in that record supports the superintendent's finding on the administrative appeal that he got notice via unit mail.

 Due process requires that prior notice of proscribed conduct be provided before punishment may be imposed for failing to comply. *Schenck v. Edwards*, 921 F. Supp. 679, 688 (E.D. Wash. 1996) (citing *Williams v. Nix*, 1 F.3d 712, 716 (8th Cir. 1993)), *aff'd*, 133 F.3d 929 (9th Cir. 1998); *Coffman v. Trickey*, 884 F.2d 1057, 1060 (8th Cir. 1989) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 2298, 33 L. Ed. 2d 222 (1972)); *Bouie v. City of Columbia*, 378 U.S. 347, 350-51, 84 S. Ct. 1697, 1700-01, 12 L. Ed. 2d 894 (1964). This principle applies within the prison disciplinary setting. *Williams*, 1 F.3d at 716 (citing *Gibbs v. King*, 779 F.2d 1040, 1044 (5th Cir. 1986)). *See also Adams v. Gunnell*, 729 F.2d 362, 368-70 (5th Cir. 1984) (inmates who were severely punished for signing a petition were denied basic due process where court could not ascertain from the record that they could have known from vague prison regulations that serious disciplinary sanctions would be imposed for that conduct); *Newell v. Sauser*, 79 F.3d 115, 117-18 (9th Cir. 1996) (it is clearly established both by common sense and precedent that due process requires fair notice of what conduct is prohibited before a sanction can be imposed). For these reasons, we reject the Department's argument that whether Krier did or did not receive notice of his cell confinement is irrelevant. We hold that where an inmate claims lack of notice of the proscribed conduct, "some evidence" in the record of the hearing must support a finding to the contrary before a serious sanction can be imposed.

In *Reismiller*, our Supreme Court concluded that a disciplinary hearing committee's finding that the petitioner was guilty of possessing marijuana was arbitrary and capricious because there was no evidence in the record connecting the

marijuana cigarette that a guard said he found in the inmate's cell with the marijuana cigarette that was before the disciplinary committee. The guard testified about finding a cigarette in the inmate's cell, but made no showing by means of chain-of-evidence testimony or any other means that the cigarette placed before the committee was the same cigarette that was found in the inmate's cell. Thus, the finding of guilt was constitutionally improper, that is to say, arbitrary and capricious. *Reismiller*, 101 Wn.2d at 296-98.

The *Reismiller* court also held that the petitioning inmate had made a prima facie showing of actual prejudice by demonstrating the lack of any evidence connecting him to the cigarette that was before the committee. *Id.* Similarly, we conclude that Krier has made a prima facie showing of actual prejudice because there is no evidence in the record of the serious sanction hearing refuting Krier's claim that he never received notice that he had been confined to his cell as a result of the general infraction hearing held in his absence.[6]

But the conclusion that the inmate had made a prima facie showing of prejudicial error did not end the inquiry in *Reismiller* and cannot end it here. A personal restraint petitioner must do more than simply make a prima facie case of actual prejudice—he " 'must show that more likely than not he was prejudiced by the error.' " *Id.* at 297 (quoting *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 825-26, 650 P.2d 1103 (1982)). The *Reismiller* court could not determine from the record whether the inmate had been prejudiced—he had been prejudiced if the cigarette that

---

[6] We summarily reject the Department's contention that the fact that Krier wasn't cited for violation of the cell-confinement sanction until the ninth day of the confinement is some evidence that he did have notice of the sanction—or else why, the Department asks, wasn't he caught outside his cell any sooner? There is simply no evidence in the record that April 11 was the first day that Krier left his cell during the cell-confinement period. The record reflects only that on that day the officer who issued the initial serious infraction report performed a routine tier check and found that Krier was not in his cell. The record is silent as to how often tier checks are performed, or whether any earlier inspections were performed during the cell-confinement period.

was before the committee couldn't be connected to him, but there was no indication in the record that the cigarette that was before the committee was other than the one the guard found in the inmate's cell, and if it was the same cigarette, the inmate hadn't been prejudiced at all. *Id.*

In *In re Pers. Restraint of Hews*, 99 Wn.2d 80, 88, 660 P.2d 263 (1983), the court set out three options that reviewing courts have in evaluating personal restraint petitions: (1) If a petitioner fails to meet the threshold burden of showing actual prejudice arising from constitutional error, the petition must be dismissed; (2) if the petitioner makes a prima facie showing of actual prejudice, but the merits of the contentions cannot be determined solely on the record, the court should remand for a hearing on the merits; and (3) if the reviewing court is convinced that the petitioner has proven actual prejudicial error, the court should grant the petition without remanding it. In *Reismiller*, the court reversed the discipline committee's finding and remanded for a new disciplinary hearing because there was no indication in the record that the cigarette in evidence *wasn't* the one the guard found, and the court was unable to decide the merits of that issue on the basis of the record before it. *Reismiller*, 101 Wn.2d at 298.

This case is different from *Reismiller* in two significant respects: First, the Department has attempted to remedy the defect in the record of the serious infraction hearing with post hoc affidavits from Salinas, and from Earles himself; and second, unlike the record in *Reismiller*, Krier's record does contain unrefuted evidence (in the form of Krier's statements at the hearing and on appeal) that he did not receive the notice to which he was entitled. *See Reismiller*, 101 Wn.2d at 298 ("Reismiller has never argued that the cigarette produced at the hearing was not the one found in his cell." (Dimmick, J., dissenting)).

■ We first consider the Department's effort to shore up the record with the post hoc affidavits. In his response to this court's inquiry as to whether we properly may consider such post hoc evidence, Krier points to WAC 137-28-310(2)

which provides that "[i]n reaching a decision on guilt or innocence of the inmate, the hearing officer must rely solely on evidence considered at the hearing." Krier argues that this regulation "establishes a bright line rule regarding what evidence may be considered when determining an inmate's guilt at a prison disciplinary proceeding. The failure to adhere to this rule by considering evidence not presented at the disciplinary hearing violates due process." Suppl. Br. of Pet'r at 16 (citing *Gronquist*, 138 Wn.2d at 401-02 (an inmate is entitled to the process that is due under prison regulations)).

By way of response, the Department first attempts to persuade us that it has not provided the affidavits of Salinas and Earles in order to supplement the evidence in the record, but merely to "explain [to the court] the evidence which the hearing officer had before him[.]" Suppl. Resp. of Dep't at 4. The gravamen of this argument appears to be that rather than supplementing the record with new evidence, these affidavits explain only what Lieutenant Earles already knew at the time of the serious infraction hearing, that is, the lieutenant knew that it was standard procedure for Sergeant Salinas to utilize unit mail to send copies of general infraction reports to inmates who were not present at their general infraction hearings, and he knew that unit mail is a safe and reliable means of notifying inmates that sanctions have been imposed in their absence. Indeed, Lieutenant Earles has never known unit mail to be delivered to anyone but the inmate for whom it was intended—and it was on the basis of this unstated knowledge that the lieutenant rejected Krier's contention that he never received notice that he was on cell confinement. The Department asks that we conclude that Lieutenant Earles' knowledge of standard prison procedure is no different from a trial judge's knowledge of local practice and procedure, or this court's knowledge of appellate practice and procedure—such knowledge does not have to be established as a matter of evidence before a judicial decision can be entered, and neither should it have to be established in the prison disciplinary process.

We are not persuaded by the Department's analogy. The Rules of Appellate Procedure, the Civil Rules, and official superior court local rules are all published rules, readily available to lawyers, litigants and reviewing courts alike, and they are not substantive evidence in any event. But we could not effectively review a judicial decision that was based on some unwritten local practice, absent evidence in the record with respect to the nature of that unwritten practice, however "standard" it might be in that particular court. And so it is, here. The affidavits of Salinas and Earles describe unwritten practices and procedures at one particular prison here in Washington. Those affidavits contain substantive evidence in every sense of the word, and it is new evidence not found in the record of the serious sanction hearing. We reject the Department's contention to the contrary.

That being so, the question remains, may we properly consider this new evidence? The Department argues that we may, pointing to *Ponte v. Real*, 471 U.S. 491, 105 S. Ct. 2192, 85 L. Ed. 2d 553 (1985). The high Court had previously said in *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) that an inmate's right to call witnesses and present evidence at a prison disciplinary hearing could be denied if granting the request would be unduly hazardous to institutional safety or correctional goals. The *Wolff* Court went on to suggest that it would be useful for the disciplinary hearing body to state its reasons for refusing to call a witness in the administrative record. *Id*. at 566. In *Ponte*, the question was whether federal due process requirements imposed a duty on the board to explain in any fashion, at the hearing or later, why an inmate's witnesses were not allowed to testify. The high Court answered as follows:

> We think the answer to that question is that prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but that they may do so either by making the explanation a part of the "administra-

tive record" in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a "liberty" interest is challenged because of that claimed defect in the hearing. In other words, prison officials may choose to explain their decision at the hearing, or they may choose to explain it "later."

*Ponte*, 471 U.S. at 497.

The Department argues that under *Ponte*, Lieutenant Earles could choose to explain why he found Krier guilty, in spite of Krier's claim that he had never received notice of his cell confinement, on the record at the hearing or "later," that is to say, in the course of this judicial review.

Although this argument has a certain amount of facial appeal, we must reject it. First and foremost, a disciplinary hearing officer's rejection of proffered evidence is not substantive evidence—it is simply a ruling having to do with prison safety and efficiency that the high court has held may be explained at some later time, if the ruling is subsequently challenged. The *Ponte* Court was not dealing with a challenge to the sufficiency of substantive evidence to support a finding of guilt. The affidavits before us contain substantive statements of fact that cannot be found in the record of the serious infraction hearing. To allow the Department to cure defects in the evidence in the record with respect to an inmate's guilt of a serious infraction, in response to a personal restraint petition challenging the sufficiency of the evidence in that same record, would defeat the principles underlying the due-process requirement that an inmate subjected to a serious sanction receive a *written* statement of the fact finder as to the evidence relied on and the reasons for the disciplinary action. These principles were explained by the United States Supreme Court in *Wolff*:

> Written records of proceedings will . . . protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the

courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others. It may be that there will be occasions when personal or institutional safety is so implicated that the statement may properly exclude certain items of evidence, but in that event the statement should indicate the fact of the omission.

*Wolff*, 418 U.S. at 565.

"In reaching a decision on guilt or innocence of the inmate, the hearing officer must rely solely on evidence considered at the hearing." WAC 137-28-310(2). That being so, we conclude that we are bound to review a personal restraint petition challenging the sufficiency of such evidence solely on the evidence in the record of that same hearing. Unless the evidence relied upon by the hearing officer is written into the record of the disciplinary proceeding, the requirement that the inmate be given a written explanation of the evidence relied on by the hearing officer has been violated and the evidence considered cannot be reviewed effectively, administratively or judicially. The end result is that the inmate has been denied minimum due process under *Wolff*.

Accordingly, we hold that we cannot properly consider the post hoc affidavits of Sergeant Salinas and Lieutenant Earles.[7] This being so, Krier has met his burden of showing actual prejudice arising from constitutional error, in that the record of his serious infraction hearing contains no evidence to refute his claim that he never received notice of the cell confinement. We grant Krier's personal restraint petition, vacate the serious infraction ruling entered on April 14, 1999, and remand to the Department with the instruction that Krier's good time that was forfeited as a result of the serious infraction be restored. *See Hews*, 99 Wn.2d at 88 (if court is convinced petitioner has proven

---

[7] That being so, we need not reach the second inquiry that we posed to counsel, i.e., whether Sergeant Salinas's affidavit (or that of Lieutenant Earles) contains "some evidence" that Krier was given actual notice of the fact that he had been placed on cell confinement.

actual prejudice arising from constitutional error, it should grant the petition without remand for further hearing).[8]

AGID, C.J., and GROSSE, J., concur.

---

[8] We decline to entertain Krier's contention that he was unconstitutionally denied his right to appeal the general infraction sanction entered on March 31, 1999. *See Gronquist,* 138 Wn.2d at 401 (because minor infractions do not result in a loss of liberty, Gronquist's constitutional rights were not violated regardless of the procedures utilized in the general infraction hearings). Insofar as Krier seeks relief from the cell-confinement sanction itself, we deny his petition.