978 P.2d 1083 (1999)
138 Wash.2d 388
In the Matter of the PERSONAL RESTRAINT OF Derek E. GRONQUIST, Respondent.
No. 66271-1.
Supreme Court of Washington, En Banc.
Argued June 17, 1998.
Decided June 24, 1999.
*1085 Christine Gregoire, Attorney General, John Blonien, Nancy Krier, Martin Wyckoff, Eric Mentzer, Assistants Attorney General, Olympia, for Petitioner.
Derek Gronquist, Airway Heights, Sheryl G. McCloud, Seattle, for Respondent.
*1084 TALMADGE, J.
We are asked to determine if an inmate who is disciplined by the Department of Corrections (Department), pursuant to a regulation making it a serious infraction if the inmate commits four underlying minor infractions within a specified period, may relitigate those minor infractions in the hearing on the serious infraction. We hold the inmate may not relitigate the underlying infractions and, therefore, we reverse the Court of Appeals and deny the personal restraint petition (PRP) of Derek E. Gronquist.

ISSUE Was Gronquist entitled to relitigate the validity of the four general infractions[1] that *1086 constituted his serious infraction under WAC 137-28-260(657)?

FACTS
Derek Gronquist is presently incarcerated, serving a 342-month sentence imposed upon his conviction in the King County Superior Court of three counts of attempted first degree kidnapping. Between October 1996 and February 1997, Gronquist was cited by prison officials at the Clallam Bay Corrections Center for four general infractions. Only one of the four general infractions charged against Gronquist is at issue in this case.[2]
The disputed infraction involved unauthorized exchange of a pouch of tobacco with another prisoner. As Gronquist was leaving his cell, another prisoner offered him some tobacco. Gronquist claims he told the inmate he did not want the tobacco and asked the inmate not to give it to him. As he was closing his cell door, he claims the inmate threw the pouch of tobacco into the cell, but Gronquist could not retrieve it because the door locked behind him. A corrections officer observed the brief encounter between Gronquist and the other inmate and instructed another corrections officer to enter Gronquist's cell and identify the object thrown into it. The officer found an unopened pouch of tobacco on the cell floor. The officer then issued a general infraction notice to Gronquist based on the tobacco incident. On November 6, 1996, an officer served Gronquist with a written notice of the infraction, and a disciplinary hearing was subsequently scheduled for the morning of November 9, 1996.
Gronquist acknowledges he was properly notified of the scheduled hearing, but he did not attend the infraction hearing allegedly because his call-out button[3] malfunctioned, resulting in the attending corrections officer being unaware of his desire to leave his cell for the hearing. Gronquist claims he repeatedly pressed his call-out button, but was not released from his cell for the hearing.
The general infraction hearing on the tobacco incident proceeded as scheduled before Sergeant McGarvey, who found the absent Gronquist guilty of the tobacco infraction as charged and imposed a sanction of cell confinement for six days. Gronquist claims he only discovered the call-out button was malfunctioning after the hearing and two corrections officers could verify the fact the button was malfunctioning.
Pursuant to WAC 137-28-250, Gronquist appealed Sergeant McGarvey's decision, claiming he was innocent of the tobacco infraction and he was improperly denied his right to be present at the November 9 hearing. Gronquist's appeal was denied on the merits by a Lieutenant Long on November 18, 1996, who wrote Gronquist stating:
I have reviewed your appeal and the General Infraction Report ... Where you were at the point in time is not the issue. Another was observed putting tobacco into your cell, and there must have been some reason for him to do it, and if it was a legitimate exchange[,] staff would have be[en] aware of [the] transaction.... I concur with the Hearings Officer's decision.... Appeal denied.
Gronquist's PRP in Court of Appeals at Ex. D. By a letter dated November 27, 1996, Gronquist attempted to appeal the tobacco infraction to Robert Wright, Superintendent of the Clallam Bay Corrections Center, but Superintendent Wright never responded.[4]
*1087 On February 27, 1997, Corrections Officer Vance Adamire issued a serious infraction notice to Gronquist charging him with violation of WAC 137-28-260(657) by having committed four general infractions within a six-month period. Hearings with respect to such serious infractions are commonly referred to as "657 hearings." The offense is defined as:
Being found guilty of four or more general infractions which have been reported in writing arising out of separate incidents, all of which occur within a six-month period.
WAC 137-28-260(657).
On March 31, 1997, Lieutenant Schneider held a 657 hearing at which Gronquist appeared and asserted the following defenses: (1) the unauthorized communication infraction was a general infraction that resulted in an on-site adjustment and therefore could not be considered a general infraction for purposes of a 657 serious infraction,[5] (2) he was unconstitutionally denied the right to appear at his November 9 general infraction hearing, and (3) Lieutenant Schneider could not find him guilty of a 657 serious infraction because he was denied his due process right at the 657 hearing.[6]
At the 657 hearing, Lieutenant Schneider denied Gronquist's request to call various corrections officers to testify concerning the tobacco incident, or to have those corrections officers provide written statements. Lieutenant Schneider refused to call the witnesses because, as he stated, he was "not going to get back into the issue of what happened during the minors," 3-31-97 Hearing Transcript at 4, which he considered irrelevant to the serious infraction. He stated "[w]hat is relevant, [is] did you receive four general infractions in a six-month period? And were you found guilty of those infractions." Id. at 5. Upon conclusion of the 657 hearing, Lieutenant Schneider found Gronquist guilty of the serious infraction and stated:
He [Gronquist] did receive four general infractions in a six-month period. He was found guilty of the four general infractions. Due process has been completed. No infraction is overturned of the appeal. Sanction's going to be 5 days deseg [disciplinary segregation], 10 days loss of good time. It's a lesser sanction for a 657 this reporting period. Do you wish to appeal?
Id. at 6-7.
Gronquist subsequently appealed the 657 hearing decision to Superintendent Robert Wright. Superintendent Wright denied Gronquist's appeal by letter, stating:
You [Gronquist] state ... [the unauthorized communication infraction] is a Double Jeopardy. When an officer confronts an inmate's behavior of breaking unit and institutional policies, then issues an infraction accordingly, it is not considered "Double *1088 Jeopardy". You also state you missed a scheduled hearing. These are posted at least 24 hours in advance and are on the daily call-out. You further claim the call-light to your cell was malfunctioning at the only precise time you attempted to leave your cell and attend your hearing. No work order has been submitted.... I fully support the recommendation of the hearing officer. Appeal denied.
Gronquist's PRP, Ex. H at 6.
Gronquist filed this PRP in the Court of Appeals, Division One, challenging his conviction for the serious infraction, and the sanction of 5 days' disciplinary segregation and 10 days' loss of good time credits. The Court of Appeals, in a per curiam opinion, granted Gronquist's PRP in part remanding for a new hearing because the Department violated Gronquist's constitutional right to present witnesses at his 657 hearing. The court indicated Gronquist had a due process right to challenge the validity of the underlying general infractions at the 657 disciplinary hearing to determine whether he had four or more infractions in a six-month period, holding "[b]ecause Gronquist's due process rights did not attach until the 657 hearing, it was only there that he could meaningfully challenge his general infraction by presenting witnesses and other evidence to support his defense." See Gronquist, 89 Wash.App. at 603, 950 P.2d 492. The Department then sought review by this Court, which we granted.

ANALYSIS
With respect to PRPs, a petitioner is entitled to full collateral review of a conviction or sentence if the petitioner proves actual prejudice from a constitutional error, or nonconstitutional error which inherently results in a complete miscarriage of justice. In re Personal Restraint of Cook, 114 Wash.2d 802, 813, 792 P.2d 506 (1990). A personal restraint petition must be supported by facts or evidence upon which the petitioner's claim of unlawful restraint is based and not solely upon conclusory allegations. Id. at 813-14, 792 P.2d 506. A petitioner must present evidence that is more than speculation, conjecture, or inadmissible hearsay. In re Personal Restraint of Rice, 118 Wash.2d 876, 886, 828 P.2d 1086, cert. denied, 506 U.S. 958, 113 S.Ct. 421, 121 L.Ed.2d 344 (1992).
Moreover, in a PRP challenging a prison disciplinary sanction, we further note such decision is reviewable only if the action taken was "so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding." In re Personal Restraint of Reismiller, 101 Wash.2d 291, 294, 678 P.2d 323 (1984). A prison disciplinary proceeding is not arbitrary and capricious if the petitioner was afforded minimum due process protections applicable in such cases. In re Personal Restraint of Burton, 80 Wash.App. 573, 585, 910 P.2d 1295 (1996); In re Personal Restraint of Anderson, 112 Wash.2d 546, 548-49, 772 P.2d 510 (1989), cert. denied, 493 U.S. 1004, 110 S.Ct. 565, 107 L.Ed.2d 559 (1989). Minimum due process in these cases means the prisoner must (1) receive notice of the alleged violation; (2) be provided an opportunity to present documentary evidence and call witnesses when not unduly hazardous to institutional safety and correctional goals; and (3) receive a written statement of the evidence relied upon and the reasons for the disciplinary action.[7]Dawson v. Hearing Comm., 92 Wash.2d 391, 397, 597 P.2d 1353 (1979) (citing Wolff v. McDonnell, 418 U.S. 539, 563-66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). A prisoner enjoys more limited due process rights than a criminal defendant. Reismiller, 101 Wash.2d at 296-97, 678 P.2d 323.
A prisoner's statutory right to earn good time credits is a "protected liberty interest in those credits which prevents their deprivation absent observation of minimum *1089 due process requirements." Johnston, 109 Wash.2d at 497, 745 P.2d 864 (citing Superintendent, Mass. Correctional Inst., 472 U.S. at 453, 105 S.Ct. 2768); Wolff, 418 U.S. at 557, 94 S.Ct. 2963; In re Personal Restraint of Piercy, 101 Wash.2d 490, 495, 681 P.2d 223 (1984) (citing Wolff, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935). Accord Sandin v. Conner, 515 U.S. 472, 477-78, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In serious infraction hearings where sanctions include loss of good time credits, Washington prisoners are entitled to minimum due process.
In the case of general infractions, however, a prisoner's minimum due process is implicated only when the prisoner faces a sanction that "imposes atypical and significant hardship ... in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484, 115 S.Ct. 2293 (disciplinary segregation as sanction for general infractions does not entitle a prisoner to minimum due process, id. at 486, 115 S.Ct. 2293). Where sanctions imposed for general infractions result at most in loss of privileges and not loss of good time credits, prisoners charged with general infractions are not entitled to minimum due process and the process afforded by regulation is all the inmate is due. See Wolff, 418 U.S. at 571-72 n. 19, 94 S.Ct. 2963 (noting "[w]e do not suggest, however, that the procedures required ... for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges"). Thus, prisoners are not entitled to minimum due process, as that term of art is used, in general infraction hearings, but are entitled to minimum due process in serious infraction cases; they are entitled to the process set forth in prison regulations.
Turning to the facts of this case, Gronquist claims a right to relitigate, in effect, the decision on general infractions in the course of his 657 hearing. He contends the failure to afford him this opportunity deprives him of any opportunity to have minimum due process, as in the present instance of the tobacco incident where he did not have an opportunity to actually litigate the merits of the controversy.
The Department's principal argument relates to its substantial administrative burden in rehearing four general infractions for each of the many 657 violation hearings at its 2 pre-release facilities and 12 correctional institutions. The Department contends the Court of Appeals decision would compel it to conduct hundreds of additional 657 hearings per year, interfering dramatically with correctional staff duties, affording prisoners significant opportunities to manipulate the disciplinary process, and generally undermining safe institutional operations by disrupting the Department's progressive discipline policy. Moreover, the revisiting of general infractions occurring over a six-month period may be functionally impossible since inmate or other witnesses may no longer be available.[8]
Upon careful review of Gronquist's allegations, we disagree with the Court of Appeals' analysis of minimum due process which must attach in a 657 hearing. We hold Gronquist has failed to establish in his PRP either a constitutional error or a nonconstitutional error that inherently results in a complete miscarriage of justice.
An initial question left unexamined in the Court of Appeals decision is whether its analysis would allow a prisoner in a 657 hearing to relitigate the facts of every predicate general infraction, even where the prisoner exhausted all available administrative remedies. This question carries immense practical consequences, *1090 and, although the Court of Appeals' per curiam opinion could be read to allow such relitigation, the Court of Appeals only stated:
Because Gronquist availed himself of his right to an administrative appeal, we leave for another day the question of whether an inmate must first exhaust his administrative remedies before being permitted to challenge a minor infraction at a 657 hearing.
Gronquist, 89 Wash.App. at 603 n. 19, 950 P.2d 492.
Gronquist confines his argument to the tobacco incident and does not discuss the other infractions which form the basis for the 657 violation. But the position he advances could be interpreted to require the relitigation of every predicate infraction in the serious infraction hearing to comply with minimum due process. Plainly, every predicate infraction forming the basis for such a 657 violation need not be relitigated when the inmate has not availed himself or herself of the administrative procedures available to challenge an underlying minor infraction. On res judicata principles, the decisions on those minor infractions for which administrative relief has not been sought by the inmate are final. Cf. Reninger v. Department of Corrections, 134 Wash.2d 437, 449-50, 951 P.2d 782 (1998) ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." (quoting United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966))). See also Lejeune v. Clallam County, 64 Wash.App. 257, 823 P.2d 1144 (policy underlying res judicata is that every party should be afforded one, but not more than one, fair adjudication of his or her claim), review denied, 119 Wash.2d 1005, 832 P.2d 488 (1992).
We next turn to the minimum due process to which Gronquist is entitled at the 657 hearing. As the parties here agree, a 657 violation is a serious infraction and minimum due process rights attach. Gronquist received notice of the claimed 657 infraction prior to the hearing. After the hearing, he received a report which indicated the evidence relied upon and the reasons for the disciplinary action. The transcript of the 657 hearing also verifies and documents Lieutenant Schneider's explanation of his reasons for denying Gronquist's request to call witnesses at the 657 hearing. See Ponte v. Real, 471 U.S. 491, 497, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985) (requires prison officials to provide reasons for denying a prisoner's request to call witnesses and allows prison officials the choice of explaining their decision at the hearing or at some later time). See also WAC 137-28-300(6)(c) (hearing officer shall document on written record the reasons for denial of in-person testimony requested in writing by prisoner). Lieutenant Schneider explained to Gronquist alleged errors as to the minor infractions were irrelevant in the 657 hearing, the only pertinent issue being whether Gronquist had been determined guilty of four general infractions within a six-month period.[9] 3-31-97 Hearing Transcript at 1-7. See WAC 137-28-300(6)(a) (hearing officer may deny the admission of evidence or testimony he determines is irrelevant or unnecessary to the adequate presentation of the inmates's case).
Gronquist essentially asserts here that he was entitled to present witnesses at the 657 hearing to relitigate collateral issues regarding the tobacco incident. Some of the witnesses allegedly would have testified as to the functioning of his cell's call-out button. We hold the Department's refusal to allow Gronquist an opportunity to relitigate collateral matters to his general infraction in a 657 hearing did not constitute a deprivation of minimum due process and, therefore, is not a constitutional error.
*1091 Initially, because a minor infraction does not result in a loss of liberty, but at most disciplinary segregation, constitutional due process does not attach for Gronquist's minor infractions. Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (indicating constitutional due process is not triggered by prison discipline which falls within the expected parameters of a court imposed sentence). Thus, regardless of the procedures utilized in the minor infraction hearings, Gronquist's constitutional rights were not violated by those proceedings. Gronquist's due process rights attach only at the time of the hearing on his serious infraction, the 657 violation.
With respect to the tobacco incident specifically, Gronquist was afforded what process he was due under Department regulations. For those prior minor infractions, he was not entitled to minimum due process, as that term of art is defined. For those infractions, he was entitled to the process derived from administrative regulations. See, e.g., WAC 137-28-230(4) (requiring guilt determination, with or without an informal hearing, within five days of the filing of general infraction report); XXX-XX-XXX (providing appeal procedures regarding general infraction guilt determination); XXX-XX-XXX (providing for inmate appeal of hearing officer decision to superintendent). Though he was not present at the initial disposition of his infraction, he had a meaningful opportunity to present his case to prison officials that he was not guilty of the infraction, and did so argue on appeal. They disagreed and so advised him in writing, specifying the grounds for their decision. Gronquist was afforded the process required by Department regulations. Even under the limited process conferred by such regulations, Gronquist was clearly afforded notice of the infraction, an opportunity to present his case, a determination by an impartial decision maker, review of that determination by another impartial decision maker, and written notice of each determination and reasons for same.
Gronquist contends now that he was entitled to due process beyond that allowed in administrative regulations for general infractions if those general infractions constitute the basis for a serious infraction. We disagree. Gronquist's contention has been rejected in state and federal law both as to culpability and enhanced sentences.
In the criminal setting, the United States Supreme Court has held defendants do not have a constitutional right in federal sentencing proceedings to challenge prior convictions used to prove the elements of crimes or to enhance sentences, unless the challenges aim at the entire denial of the right to counsel.[10]Custis v. United States, 511 U.S. 485, 496-97, 114 S.Ct. 1732, 1738-39, 128 L.Ed.2d 517 (1994) (Court declined to extend the right to attack collaterally prior convictions used for sentence enhancement beyond the right to have appointed counsel, holding the Armed Career Criminal Act does not permit defendant to use federal sentencing forum to gain review of his prior state convictions). See also Nichols v. United States, 511 U.S. 738, 748-49, 114 S.Ct. 1921, 1928-29, 128 L.Ed.2d 745 (1994) (approving use of defendant's prior uncounseled misdemeanor convictions to enhance his sentence for a felony; as no jail time had been imposed when the misdemeanor convictions were entered, the absence of counsel did not violate the Sixth Amendment in those cases); Lewis v. United States, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) (the government is not required to prove the constitutional validity of prior convictions used to prove an element of a federal firearms offense). Gronquist does not have a constitutional right to challenge the minor infractions at his 657 violation hearing.
Likewise, in our interpretation of the Persistent Offender Accountability Act of 1981 (Initiative 593), Washington's so-called Three Strikes Law, we have held a defendant may not challenge the underlying convictions forming the basis for a life sentence if they are facially valid. See State v. Manussier, 129 Wash.2d 652, 682, 921 P.2d 473 (1996) (holding "there is no provision in the SRA [Sentencing Reform Act of 1981], or in Initiative 593 [Persistent Offender Accountability Act] itself, for a separate jury trial on *1092 the issue of prior convictions or the constitutional validity of those prior convictions", and noting "the State need not prove the constitutional validity of a defendant's prior convictions unless they had been previously declared unconstitutional or were facially unconstitutional."), cert. denied, 520 U.S. 1201, 117 S.Ct. 1563, 137 L.Ed.2d 709 (1997). See also State v. Thorne, 129 Wash.2d 736, 781-84, 921 P.2d 514 (1996) (noting in sentencing under the persistent offender section of the SRA the trial court determines the defendant's criminal history by a preponderance of the evidence, and holding the only two relevant inquiries for such sentencing court are "whether certain kinds of prior convictions exist and whether the defendant was the subject of those convictions ..." id. at 783, 921 P.2d 514).[11]
Custis, Lewis, and Nichols, as well as Manussier and Thorne indicate neither federal nor state law entitles a criminal defendant to attack a prior putatively unconstitutional conviction used to enhance a sentence. As the due process rights in prison disciplinary proceedings are much less extensive than those which apply in criminal prosecutions, Gronquist has not established a sufficient constitutional violation upon which to secure relief.
In addition to arguing his right to present witnesses at his serious infraction hearing on minimum due process grounds, Gronquist asserts the protections of Baldasar v. Illinois, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), and United States v. Mendoza-Lopez, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), should apply to his case. Gronquist contends Baldasar held a prior uncounseled misdemeanor conviction could not convert a second misdemeanor into a felony under Illinois' recidivist law, even though the misdemeanor conviction was initially valid. He suggests Nichols merely distinguished Baldasar, but the United States Supreme Court was more direct in its assessment of Baldasar, stating:
Today we adhere to Scott v. Illinois, [440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979)], and overrule Baldasar. Accordingly we hold, consistent with the Sixth and Fourteenth Amendments of the Constitution, that an uncounseled misdemeanor conviction, valid under Scott because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction.
Nichols, 511 U.S. at 748-49, 114 S.Ct. 1921 (footnote omitted). Thus, under federal law, since Gronquist's due process rights in the minor infraction proceeding were not violated, using those infractions in the subsequent hearing on the serious infraction cannot be unconstitutional.
Gronquist's reliance on Mendoza-Lopez is also misplaced. In Mendoza-Lopez, the issue before the United States Supreme Court was "whether an alien who is prosecuted under 8 U.S.C. § 1326 for illegal entry following deportation may assert in that criminal proceeding the invalidity of the underlying deportation order." Mendoza-Lopez, 481 U.S. at 830, 107 S.Ct. 2148. The Supreme Court held "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." Id. at 838, 107 S.Ct. 2148.
The Court declined, however, to enumerate which procedural errors are "so fundamental *1093 that they may functionally deprive the alien of judicial review, requiring that the result of the hearing in which they took place not be used to support a criminal conviction." Id. at 839 n. 17, 107 S.Ct. 2148. The Court noted, however, "in the context of criminal proceedings, that `some errors necessarily render a trial fundamentally unfair'". Id. The court then listed use of coerced confession, adjudication by a biased judge, mob violence, and knowing use of perjured testimony as circumstances constituting fundamental unfairness, noting "[w]hile the procedures required in an administrative proceeding are less stringent than those demanded in a criminal trial, analogous abuses could operate, under some circumstances, to deny effective judicial review of administrative determinations." Id.
Such onerous abuses are not present here, however. Furthermore, Mendoza-Lopez does not address circumstances similar to inmate disciplinary proceedings, or the day to day operation of prisons to which the Supreme Court has deferred as peculiarly within the province and professional expertise of corrections officials. See, e.g., Turner v. Safley, 482 U.S. 78, 85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (citing cases deferring to prison officials' determinations); Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (noting the limitation of inmates' rights necessitated by incarceration, recognizing the aim of prison discipline is to effectuate prison management, and approving prison discipline falling within the expected parameters of an imposed sentence); Wolff, 418 U.S. at 566-67, 94 S.Ct. 2963 (noting operation of prison is extraordinarily difficult undertaking and deferring to prison officials' refusal to call witnesses requested at disciplinary hearings where such testimony would be irrelevant, unnecessary or hazardous/detrimental to prison operations or correctional goals). As Mendoza-Lopez does not address the unique circumstances and considerations of the prison environment present in this case, it is inapplicable here.[12]
Finally, Gronquist also fails to demonstrate a nonconstitutional error resulting in a complete miscarriage of justice. Matter of Cashaw, 123 Wash.2d 138, 148, 866 P.2d 8 (1994). Prison officials are afforded greater opportunity to impose discipline in the context of minor infractions in order to preserve appropriate control of prisoner behavior and maintain institutional safety and order. A system of progressive discipline, as envisioned by general infractions and a serious violation like the 657 violation, advances such policy. Every minor institutional infraction cannot be litigated like the trial of the century. Gronquist was afforded an opportunity to contest the imposition of discipline in the tobacco incident and the other general infractions. That is all the law requires. He was afforded minimum due process in the 657 hearing; he had the opportunity to know the allegation against him and to appropriately contest whether he had actually been found culpable for four predicate minor infractions within six months.[13] He has failed to prove a complete miscarriage of justice in this case.

CONCLUSION
Gronquist fails to establish that he is entitled to relief in his PRP. There is no basis to his contention he is entitled to relitigate underlying minor infractions in a serious infraction proceeding under WAC 137-28-260(657).
We reverse the decision of the Court of Appeals and deny Gronquist's PRP.
*1094 GUY, C.J., SMITH, DURHAM, JOHNSON, ALEXANDER, JJ., and DOLLIVER, J.P.T., concur.
MADSEN, J., concurs in result only.
SANDERS, J. (dissenting).
Although the majority acknowledges Gronquist's due process entitlement includes the right to call witnesses at a serious infraction hearing,[1] Majority at 1089 and 1090, it ultimately subverts that right by allowing an accumulation of underlying minor infractions to obscure the serious consequence of a serious infraction which brings with it greater procedural entitlements. I would therefore affirm the Court of Appeals' decision that Gronquist has been unconstitutionally deprived his liberty interest in good time credits absent that process constitutionally due, contrary to our holding in Dawson v. Hearing Comm., 92 Wash.2d 391, 597 P.2d 1353 (1979).
Prison disciplinary proceedings are reviewed against an arbitrary and capricious standard, testing whether the petitioner was denied a fundamentally fair hearing. In re Personal Restraint of Reismiller, 101 Wash.2d 291, 294, 678 P.2d 323 (1984); In re Personal Restraint of Burton, 80 Wash. App. 573, 585, 910 P.2d 1295 (1996); Dent v. West Virginia, 129 U.S. 114, 124, 9 S.Ct. 231, 32 L.Ed. 623 (1889) (due process protects individual against arbitrary action by government).
Although the rights of prisoners are not those of free citizens, prisoners nevertheless retain certain core constitutional protections, including the Fourteenth Amendment's guarantees against deprivation of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 555-56, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In particular the prisoner's constitutional right to not be deprived of good time credit[2] absent that process legally due is clearly established. Wolff, 418 U.S. at 557, 94 S.Ct. 2963 ("But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment `liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated."); In re Personal Restraint of Anderson, 112 Wash.2d 546, 548, 772 P.2d 510 (1989) ("Statutory right to good time credits constitutes a liberty interest which is protected by the due process clause."). Moreover, precedent clearly establishes an inmate facing loss of good time credit in disciplinary proceedings enjoys the due process right to call witnesses and present evidence in his defense provided this does not compromise institutional safety or correctional goals in a particularized sense. Wolff, 418 U.S. at 566, 94 S.Ct. 2963; Dawson v. Hearing Comm., 92 Wash.2d at 397, 597 P.2d 1353; In re Personal Restraint of Burton, 80 Wash.App. at 585, 910 P.2d 1295.
Washington's prison discipline system divides infractions into minor (or general) infractions and serious infractions. WAC 137-28-220; WAC 137-28-260. Loss of good time credit is a possible sanction for a serious infraction, WAC 137-28-350(1)(l), thereby triggering inmates' due process rights; whereas, Fourteenth Amendment liberty interests are normally not so implicated in the context of a single general infraction where the sanction does not include the loss of good time credit but affects only the conditions rather than the length of confinement.[3]See WAC 137-28-240.
*1095 Gronquist appropriately claims entitlement to more process when faced with loss of good time credit in a serious infraction hearing than those required for a minor infraction proceeding. WAC 137-28-230(4)(b) (sanction may be imposed for a minor infraction without a hearing). At issue is the process due Gronquist for an alleged violation of WAC 137-28-260(657) which transforms the accumulation of four or more minor (general) infractions during a six-month period into a serious one.
Although the majority concedes essential procedural guarantees attach to prospective loss of good time credits in a serious infraction hearing, Majority at 1088, it renders those guarantees meaningless by foreclosing any right of the prisoner to assert them.[4] Thus the majority denies Gronquist the right to present witnesses when the general infractions combine to constitute a serious infraction, even though the majority admits Gronquist was due greater process at that stage. Majority at 1090; see Dawson, 92 Wash.2d at 397, 597 P.2d 1353 ("limited number of procedural safeguards must be afforded when a prison resident is subject to discipline for `serious misconduct' which may deprive him of a liberty interest ... [including] where not unduly hazardous, a right to call witnesses"); In re Personal Restraint of Burton, 80 Wash.App. at 585, 910 P.2d 1295 (minimum due process to which prisoners are entitled in disciplinary proceedings include "an opportunity to ... call witnesses when not unduly hazardous to institutional safety and correctional goals") (citation omitted); cf. Love v. State, 551 N.W.2d 66 (Iowa 1996) (holding where a minor infraction results in sanctions for a major infraction, an inmate is entitled to due process).
Deprivation of the essential elements of that process due, including the fundamental right to call witnesses, is disguised by the language of the majority which consistently refers to Gronquist's desire to "relitigate" the general infractions. Majority at 1085, 1086, 1089, 1090, 1091, and 1093. Since the word "litigate" connotes a lawsuit in a court with attendant due process,[5] the majority's implication is Gronquist's right to call witnesses has already been expended in his "prior litigation." Not so. Here the whole is truly greater than the sum of its parts as the consequence to Gronquist is qualitatively different and therefore entitles him to constitutional protections not previously mandated, and process not previously provided.
Moreover the majority uncritically accepts the Department of Corrections' argument that the determining factor in this case is the "substantial administrative burden" which would be imposed by allowing an inmate to present witnesses in a 657 hearing because the number of hearings required for the general prison population would interfere with staff duties, "generally undermining safe institutional operations by disrupting the Department's progressive discipline policy." Majority at 1089. While it is true an inmate's due process right to call witnesses is not absolute and may be curtailed if the exercise of such a right would be "unduly *1096 hazardous to institutional safety or correctional goals," Wolff, 418 U.S. at 566, 94 S.Ct. 2963, the Supreme Court further explained:
Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.

Id. (emphasis added); see also Dawson, 92 Wash.2d at 397, 597 P.2d 1353. Therefore if an inmate's due process right to call witnesses is to be denied, prison officials must exercise their discretion in light of the particular circumstances of each individual case, usually providing the inmate with reasons for denying this right. Only by carefully weighing the hazards of each specific situation before denying an inmate's right to call witnesses is that right rendered meaningful. Conversely, imposition of a blanket rule denying all inmates the right to call witnesses in disciplinary proceedings based on a general assertion of institutional safety renders the due process rights outlined in Wolff illusionary.
Notwithstanding, the majority erroneously endorses the general "substantial administrative burden" the Department of Corrections alleges would result if witnesses were heard at each 657 hearing as a hazard sufficient to deny any inmate the right to call witnesses without case-specific factual predicate. Majority at 1089-1090. The majority's reasoning conflicts with Wolff as it fails to require independent consideration of the hazards of the individual case before the exercise of discretion to abrogate these procedural safeguards. What began as an exception to the rule the majority now degrades into the rule itself.
Furthermore the majority falsely equates a "substantial administrative burden" with a hazard to institutional safety. Normally an administrative burden does not pose any risk to safety in a correctional institution. It is a fiscal burden insufficient to deprive one of that process which is his constitutional due. The majority's argument is therefore tantamount to violating inmates' rights merely because of a reluctance to hire an adequate number of staff. But mere administrative convenience should not be allowed to trump constitutional entitlements. Such is also clearly contrary to the plain language of Wolff which requires a real and specific threat to institutional safety rather than mere general unwillingness to provide staff as justification to abridge an inmate's right to call witnesses on his own behalf.
The majority analogizes to federal sentencing proceedings and the Persistent Offender Accountability Act of 1981 (the "three strikes" law), claiming in those situations the defendant does not enjoy the right to challenge prior convictions when sentenced. Majority at 1091-1092. It argues support for its decision, contending "the due process rights in prison disciplinary proceedings are much less extensive than those which apply in criminal prosecutions." Majority at 1092. However in the case of sentencing, a criminal defendant has already been afforded full due process for each prior conviction, whereas in the present case Gronquist had no such right. It is precisely for this reason we must protect the right of the prisoner to call witnesses on his own behalf absent fact-specific, compelling circumstances which render such process "unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 566, 94 S.Ct. 2963. As Gronquist was denied the fundamental right to call witnesses on his own behalf to avoid additional confinement, I would affirm the Court of Appeals and dissent from the errant views of this court's majority.
NOTES
[1] "General infractions" are minor infractions whose violation may result in sanctions involving the loss of privileges. WAC 137-28-230 indicates such infractions may be resolved by a staff member in an "on-site adjustment" or summary discipline (where no report is filed, such incident may not be considered in a 657 serious infraction calculation, see WAC 137-28-230(1)), without a hearing, see WAC 137-28-230(4)(b), or in an informal hearing where witnesses and documentary evidence are allowed, see WAC 137-28-230(4)(c). WAC 137-28-240 lists the sanctions imposed for general infractions: (1) reprimand or warning; (2) issuance of a written order to cease a problematic behavior; (3) loss of a privilege(s); (4) room or cell confinement (with exceptions) not to exceed 10 days; (5) up to 120 hours of extra work duty.

"Serious infractions," listed in WAC 137-28-260, are those which may result in a loss of good conduct time credits, that portion of a prisoner's potential reduction to minimum term which is authorized by RCW 9.95.070 and 72.09.130. See WAC 137-28-160. More extensive process is afforded prisoners on serious infractions. See WAC 137-28-290 and 300.
[2] The other general infractions involved unauthorized possession of contraband, for which Gronquist received a sanction of three days' cell confinement, unauthorized communication with another prisoner in another section of the facility, for which Gronquist was given a sanction of three days' cell confinement, and failure to keep his cell in accordance with institutional rules, for which Gronquist was given a warning.
[3] Each cell at the Clallam Bay facility is equipped with a call-out button which alerts a corrections officer to an emergency or to a prisoner's need to leave the cell for some other reason. We note the record indicates no work orders requesting repair of the call-out button in question existed contemporaneously with the events here.
[4] Gronquist's November 27, 1996 appeal to Superintendent Wright of Lieutenant Long's November 18, 1996 decision denying Gronquist's appeal, appears to have been untimely. WAC 137-28-380(1) requires appeals to the superintendent of a hearing officer's decision must be filed with the clerk within 24 hours (excluding weekends and holidays) of the inmate's notice of such decision.
[5] In his Court of Appeals brief at 8-9, Gronquist argued the unauthorized communication infraction should not have been considered a general infraction. See WAC 137-28-230(1) and (2). The Court of Appeals concluded that because some general infractions require immediate intervention by corrections officers, "[prison] [s]ecurity would be compromised if an officer who saw a general infraction had to choose between immediate on-site adjustment and filing [a general] infraction report." In re Personal Restraint of Gronquist, 89 Wash.App. 596, 605, 950 P.2d 492 (1997). Indeed, Gronquist's interpretation would require the anomalous result of a lesser consequence for more egregious conduct which merited immediate intervention by an officer. In any event, the incident resulted in a written general infraction report, a finding of guilt, and a sanction of three days' cell confinement. Id. at 605, 950 P.2d 492. Thus, the 657 hearing at issue properly considered four separate general infraction incidents which were reported in writing and occurred within six months. WAC 137-28-260(657).
[6] The Court of Appeals concluded the Department of Corrections did not violate Gronquist's due process right to attend the hearing because that right was provided under applicable regulations and was not constitutionally required. Gronquist, 89 Wash.App. at 606, 950 P.2d 492. See also WAC 137-28-140.
[7] Factual determinations of prison officials must stand if there is "some evidence" in the record to support the prison disciplinary decision. Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 455-56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (appropriate evidentiary standard is the examination of the record for "any evidence" that could support the conclusion reached by the disciplinary board to revoke good time credits); see also In re Personal Restraint of Johnston, 109 Wash.2d 493, 497, 745 P.2d 864 (1987) (citing Reismiller, 101 Wash.2d at 295-96, 678 P.2d 323).
[8] The Department submitted statistics on the number of general and serious infractions issued during 1997: in fiscal year 1997, there were 31,629 general infractions and 22,143 serious infractions issued in its institutions. Six hundred eighty-nine 657 violations were issued in fiscal year 1997; and 487 had been issued as of March 27 in fiscal year 1998. The Department estimates total staff time spent processing an average general infraction is estimated at approximately one hour, and for an average serious infraction approximately two hours. The Department also suggests the administrative costs for relitigating the general infractions involved in each 657 hearing would be high. A University of Washington study of its disciplinary system estimated the cost per year at a single medium-range security Washington State prison for minor infractions (accounting for staff time, proceedings and filing reports) in 1994-95 was $127,826. See David Lovell & Ron Jemelka, When Inmates Misbehave: The Costs of Discipline, 76 Prison Journal No. 2 (June 1996), at 176.
[9] Gronquist explained the witnesses he requested were for the purpose of challenging the guilt determinations in two of the minor infractions at issue. 3-31-97 Hearing Transcript at 2-6. As guilt had already been determined as to those infractions and the appellate process completed, such testimony (by way of attempting to relitigate those minor infractions) was irrelevant to the pertinent inquiry in the 657 hearing.
[10] The defendant may, of course, however, challenge the state convictions in state court or through federal habeas review in a separate proceeding. Custis, 511 U.S. at 497, 114 S.Ct. 1732.
[11] We note the analogy to enhanced punishments under the Sentencing Reform Act of 1981(SRA) as well. In State v. Ammons, 105 Wash.2d 175, 713 P.2d 719, 718 P.2d 796, cert. denied, 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986), we upheld the use of prior criminal convictions to establish criminal history, a key sentencing factor under the (SRA):

We hold that the State does not have the affirmative burden of proving the constitutional validity of a prior conviction before it can be used in a sentencing proceeding. However, a prior conviction which has been previously determined to have been unconstitutionally obtained or which is constitutionally invalid on its face may not be considered. Constitutionally invalid on its face means a conviction which without further elaboration evidences infirmities of a constitutional magnitude.
Id. at 187-88, 713 P.2d 719 (citations omitted). See also State v. Morley, 134 Wash.2d 588, 614-20, 952 P.2d 167 (1998) (applying the above language and holding prior convictions in general courts-martial counted toward a defendant's criminal history for sentencing purposes).
[12] Gronquist's also asserts our state constitution, in art. I, § 3, providing the right to due process, and § 14, prohibiting cruel punishment, provides more protection than the federal constitution, and he should be afforded such enhanced protection. Although Gronquist cites State v. Gunwall, 106 Wash.2d 54, 61-62, 720 P.2d 808, 76 A.L.R.4th 517 (1986), he fails to engage in the analysis required by that case. We decline to reach his state constitutional argument. See State v. Ortiz, 119 Wash.2d 294, 302, 831 P.2d 1060 (1992) (noting the six Gunwall factors must be addressed before we will undertake state constitutional analysis); Thorne, 129 Wash.2d at 770, 921 P.2d 514 (declining to consider application of state constitution where defendant failed to engage in Gunwall analysis).
[13] Although Gronquist asserted errors at the 657 hearing regarding two of the prior general infraction determinations, he admitted he had indeed been found guilty of the four general infractions within the necessary six-month period. 3-31-97 Hearing Transcript at 5-6.
[1] A hearing under WAC 137-28-260(657) for a serious infraction shall be referred to as a "657 hearing."
[2] See Black's Law Dictionary 694 (6th ed. 1990) ("`Good time' credit is awarded for good conduct and reduces period of sentence which prisoner must spend in prison although it does not reduce the period of the sentence itself. Credit allowed on the sentence which is given for satisfactory conduct in prison. Introduced as an incentive for inmates, it has become practically automatically awarded.") (citation omitted).
[3] However due process could be triggered by a sanction for a general infraction if that sanction resulted in "atypical and significant hardship" beyond those hardships normally experienced in prison. Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).
[4] The majority asserts the principles of res judicata apply to decisions on minor infractions, citing Reninger v. Department of Corrections, 134 Wash.2d 437, 449-50, 951 P.2d 782 (1998). However an administrative determination is not necessarily preclusive. Restatement (Second) of Judgments § 83(2) (1982) ("An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication, including ... (b) The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties."); see also Reninger, 134 Wash.2d at 460-61, 951 P.2d 782 (Sanders, J., dissenting). Reninger is clearly distinguishable as the plaintiffs in that case "took advantage of numerous procedures that obtain in superior court trials ... [and] called witnesses on their behalf and cross-examined the State's witnesses." Reninger, 134 Wash.2d at 451, 951 P.2d 782. Here Gronquist was afforded no opportunity to utilize such procedural protections. Moreover it is clear collateral estoppel "must not apply `so rigidly as to defeat the ends of justice, or to work an injustice.'" Id. (quoting Henderson v. Bardahl Int'l Corp., 72 Wash.2d 109, 119, 431 P.2d 961 (1967)). Complete denial of procedural fairness manifests such an injustice as to also render collateral estoppel simply inapplicable.
[5] See Webster's Third New Int'l Dictionary 1322 (1981) (defining "litigate" as "to carry on a legal contest by judicial process").