FAIRHURST, C.J. (dissenting)
¶35 I disagree with the lead opinion that due process requires the Department of Corrections (DOC) to once again prove the facts underlying a drug offender sentencing alternative (DOSA) treatment program termination decision in a DOSA revocation hearing. The hearing to revoke an alternative sentence is not part of the criminal proceedings, and the due process rights afforded at the revocation hearing are not the same as those provided to a defendant in a criminal trial. State v . Dahl, 139 Wash.2d 678, 683, 990 P.2d 396 (1999). "[A]n offender facing a revocation of a suspended sentence has only minimal due process rights because the trial has already occurred and the offender was found guilty beyond a reasonable doubt." State v . McCormick, 166 Wash.2d 689, 700, 213 P.3d 32 (2009).
¶36 Inmates are entitled to minimum due process in serious infraction cases. In re Pers. Restraint of Gronquist, 138 Wash.2d 388, 398, 978 P.2d 1083 (1999). Minimum due process means the inmate must "(1) receive *961 notice of the alleged violation; (2) be provided an opportunity to present documentary evidence and call witnesses when not unduly hazardous to institutional safety and correctional goals; and (3) receive a written statement of the evidence relied upon and the reasons for the disciplinary action." Id. at 396-97, 978 P.2d 1083 (citing Dawson v . Hr'g Comm., 92 Wash.2d 391, 397, 597 P.2d 1353 (1979) ). "Factual determinations of prison officials must stand if there is 'some evidence' in the record to support the prison disciplinary decision." Id. at 397 n.7, 978 P.2d 1083 (quoting Superintendent, Mass. Corr. Inst. v . Hill, 472 U.S. 445, 455-56, 105 S.Ct. 2768, 86 L.Ed. 2d 356 (1985) ).
¶37 Inmates with a DOSA sentence must sign a DOSA agreement and comply with the DOSA treatment program requirements. See Pet'r/Appellant's Br. (Pet'r's Br.), App. at 23-26. An offender violates the DOSA agreement by being found guilty of "[a]ny major infraction that causes a change in custody level." Id. at 23. An offender violates the DOSA treatment program requirements by engaging in "[a]ny threat or act of violence toward staff or another patient." Id. at 25. Offenders who violate the DOSA agreement or treatment program requirements can be administratively terminated from the DOSA treatment program. See id. at 23, 25; RCW 9.94A.662(3).
¶38 Offenders terminated from the DOSA treatment program are given a serious infraction and entitled to a DOSA revocation hearing at which "[DOC] has the obligation of proving each of the allegations of violation by preponderance of the evidence." WAC 137-24-030(10) ; In re Pers. Restraint of McKay, 127 Wash. App. 165, 170, 110 P.3d 856 (2005). Under the plain language of the statute and regulation, at a DOSA revocation hearing for administrative termination the only relevant question is whether the offender was terminated from the treatment program. RCW 9.94A.662(3) requires that a person terminated from the DOSA treatment program "shall be reclassified to serve the unexpired term of his or her sentence as ordered by the sentencing court."
¶39 Matthew Schley arrived at Olympic Corrections Center (OCC) on January 7, 2015, to serve two King County DOSA sentences. See Pers. Restraining Pet. (PRP), Pet'r's Br., App. at 35. On January 21, 2015, Schley reviewed and signed the DOSA agreement and chemical dependency (CD) treatment requirements. Id. at 24-26. The treatment requirements provided, "The following behaviors WILL result in termination from the Department's CD treatment program: 1. Any threat or act of violence toward staff or another patient." Id. at 25; Resp. of DOC, Ex. 5. Schley began programming in the OCC Therapeutic Community Long-Term Treatment CD Program on January 22, 2015. Pet'r's Br., App. At 36; Resp. of DOC, Ex. 7, at 2.
¶40 On January 26, 2015, Schley was charged with a serious infraction for fighting with another inmate. Pet'r's Br., App. at 27; WAC 137-25-030 (serious violation 505). Schley was placed into administrative segregation the next day pending DOC's investigation. DOC held an infraction hearing on February 9, 2015. Pet'r's Br., App. at 61. The hearing officer found Schley guilty of a serious infraction under the some evidence standard-based on physical evidence of his injuries, the other inmate's injuries, and witness information-and sanctioned Schley to 15 days of segregation and 15 days of loss of good conduct time. Id. at 27; Resp. of DOC, Ex. 13, at 3.
¶41 On February 10, 2015, the treatment program administratively terminated Schley for violating the program requirements by fighting with another patient. Pet'r's Br., App. at 36; Resp. of DOC, Ex. 13, at 2. Schley was transferred to the Washington Corrections Center on February 11, 2015. On February 13, 2015, Schley's infraction was affirmed on appeal. Pet'r's Br., App. at 61.
¶42 Schley's administrative termination from the DOSA treatment program subjected him to a DOSA revocation hearing for committing a "762" serious infraction. See WAC 137-25-030 ("762-Failing to complete or administrative termination from a DOSA substance abuse treatment program."). At the DOSA revocation hearing on April 2, 2015, the hearing officer found by a preponderance of the evidence that Schley had been terminated from the program and revoked *962 the DOSA sentence pursuant to RCW 9.94A.662(3). Pet'r's Br., App. at 38; Resp. of DOC, Ex. 13, at 4. The DOSA statute provides, "An offender who ... is administratively terminated from the program shall be reclassified to serve the unexpired term of his or her sentence as ordered by the sentencing court." RCW 9.94A.662(3).
¶43 Schley was afforded due process at every stage of this case. With regard to the fighting infraction hearing (serious violation 505), DOC provided minimum due process because Schley was provided notice, an opportunity to be heard, a written statement of the evidence and reasons for the action, and the hearing officer found Schley guilty of a serious infraction under the some evidence standard. See Pet'r's Br., App. at 38. With regard to the DOSA revocation hearing (serious violation 762), DOC again provided minimum due process because Schley was provided notice, an opportunity to be heard, a written statement of the evidence and reasons for the action, and the hearing officer found Schley guilty by a preponderance of the evidence as required by WAC 137-24-030(10). See Pet'r's Br., App. at 34. At no point during the initial hearings or appeals was Schley denied minimum due process or the protections afforded to him by prison regulations.
¶44 The lead opinion's conclusion that due process requires DOC to again prove the fighting infraction by a preponderance of the evidence at a subsequent hearing conflicts with this court's holding in Gronquist, 138 Wash.2d 388, 978 P.2d 1083. In Gronquist , the inmate was charged and found guilty of a serious prison infraction of committing four general prison infractions within a span of six months. Id. at 390-91, 978 P.2d 1083. The inmate filed a PRP, arguing that he had a due process right to relitigate the general infractions at his hearing on the serious infraction under the higher some evidence standard applicable to serious prison infractions.
¶45 This court held that "[DOC]'s refusal to allow [the inmate] an opportunity to relitigate collateral matters to his general infraction in a [serious infraction] hearing did not constitute a deprivation of minimum due process." Id. at 401, 978 P.2d 1083. The court was satisfied that the inmate was afforded sufficient process because DOC complied with the regulations regarding general infractions and provided the inmate with notice and an opportunity to be heard at the serious infraction hearing:
[The inmate] was afforded an opportunity to contest the imposition of discipline in the tobacco incident and the other general infractions. That is all the law requires. He was afforded minimum due process in the [serious infraction] hearing; he had the opportunity to know the allegation against him and to appropriately contest whether he had actually been found culpable for four predicate minor infractions within six months. He has failed to prove a complete miscarriage of justice in this case.
Id. at 406-07, 978 P.2d 1083 (footnote omitted).
¶46 The facts of this case are analogous to the facts of Gronquist and warrant the same result. Just like in Gronquist , where the inmate sought to relitigate a prior general infraction under the heightened standard of proof applicable at a serious infraction hearing, Schley seeks to relitigate a serious infraction under the heightened standard of proof applicable at a DOSA revocation hearing. We held in Gronquist that due process does not allow an inmate to collaterally challenge his guilt of a prior infraction in a subsequent hearing. Id. at 403, 978 P.2d 1083. Therefore, Schley may not collaterally challenge his guilt of a prior infraction at his DOSA revocation hearing. Because there is no meaningful distinction between this case and Gronquist , I disagree with the lead opinion's contention that due process requires that Schley be permitted to relitigate his prior fighting infraction at a DOSA revocation hearing.
¶47 I also disagree with the lead opinion's holding on this issue because it leads to an absurd result. Under the lead opinion's holding, an inmate could be proved guilty of a fighting infraction under the some evidence standard and consequently be terminated from treatment-but the inmate would retain his DOSA sentence if DOC could not prove the facts underlying the fighting infraction *963 by a preponderance of evidence. The purpose of the DOSA statute is to provide substance abuse treatment. Allowing an inmate to retain a DOSA sentence after being terminated from treatment runs counter to the very purpose of the DOSA statute. Perhaps more importantly, it would be fundamentally unfair to allow an offender to benefit from the shortened prison sentence under DOSA if the core purpose of the statute is no longer served. I respectfully dissent.
Madsen, J.
Johnson, J.
Stephens, J.