**FILED**
**JANUARY 27, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 37438-6-III |
| | ) | |
| | ) | |
| PERRY T. ASHELMAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Petitioner. | ) | |

LAWRENCE-BERREY, J. — Perry Ashelman, an inmate in the custody of the

Washington State Department of Corrections (DOC), seeks relief from personal restraint

with respect to two infractions. DOC expunged one infraction in response to this

personal restraint petition (PRP) so the challenge to that infraction is now moot.

As to the other infraction, Ashelman argues DOC violated his right to due process

by refusing to provide information that would allow him to exercise his right to call

witnesses and to present video evidence at his infraction hearing. Because due process

does not require DOC to disclose information that does not exist nor does it require DOC

to always identify potential witnesses, we dismiss Ashelman's petition.

FACTS

Perry Ashelman is an inmate serving a sentence for residential burglary in the custody of the DOC. He challenges findings of guilt from two infractions received while in prison.

*Infraction Group Number 48*

While Ashelman was in custody at Stafford Creek Corrections Center, mailroom staff intercepted threatening letters from Ashelman to his estranged wife. After initiating an investigation, corrections staff overheard Ashelman make additional threats in telephone calls to his wife. On August 1, 2019, Ashelman was found guilty of three infractions under WAC 137-25-030:

- (503), extorting or blackmailing, or demanding or receiving anything of value in return for protection against others or under threat of informing;
- (506), threating another with bodily harm or with any offense against any person or property; and
- (507), committing an act that would constitute a felony that is not otherwise included in these rules, namely, extortion in the first degree in violation of RCW 9A.56.120.

Suppl. Resp. of DOC, (Dec. 17, 2020), Ex. 1, Attach. F. His sanctions included the loss of 150 days of good conduct time. He appealed the infraction through the DOC and did not receive relief.

*Infraction Group Number 49*

On August 28, 2019, Ashelman was transferred to Airway Heights Corrections Center. Ashelman was transported to the medical unit for an urgent medical complaint. Ashelman insisted he needed narcotics for his medical complaint. On the orders of the on-call medical provider, the attending registered nurse (RN), C. Wallace, was unable to give him anything stronger than Tylenol. After being informed he would not receive narcotic medication, Ashelman became angry, made closed fist gestures at RN Wallace, and began shouting and cursing at her with abusive language. RN Wallace feared for her personal safety and that of other staff members who would need to care for him in the medical unit and requested custody staff assistance. Sergeant Devin Cornell responded and made the decision to move Ashelman to a medical segregation cell so the medical assessment could continue in a more secure location. Once transferred to the medical cell, Ashelman refused further medical attention.

RN Wallace filed a serious infraction report detailing the event, listing the infraction as using physical force, intimidation, or coercion against any person in violation of WAC 137-25-030(663). Corrections Officer Patrick Haire, who had escorted Ashelman to the medical unit, and Sergeant Cornell also filed incident reports as witnesses to the incident. A disciplinary hearing was scheduled for September 4, 2019.

On August 30, 2019, Hearing Escort Officer Hall served Ashelman a notice of the hearing. Included with the notice were the three reports from witnesses to the incident. Ashelman demanded Officer Hall provide names of all the staff present at the time of the incident so he could request witness statements from each of them. Officer Hall did not have that information and could not obtain the information for Ashelman, but could request witness statements from anyone for whom Ashelman supplied names. Ashelman was told this, but insisted his rights were being violated and refused to sign any paperwork for the hearing.

At the hearing, Hearing Officer Don DeShazer noted that Ashelman had not requested witness statements and asked if Ashelman had determined the names of the people from whom he wanted witness statements. Ashelman told the hearing officer he had asked Officer Hall to review the camera footage to see what officers were available and identify four nurses, asserting that "[p]er policy, [the hearing escort officer's] job duties [are] to go out and gather information." Report of Proceedings (RP) at 5. The hearing officer informed Ashelman that, contrary to Ashelman's assertion, it was not the job of either the hearing escort officer or the hearing officer to investigate the incident.

Ashelman then requested to review the video footage. The hearing officer asked where the incident occurred, and Ashelman answered that the "incident was all the way

from the unit all the way to here," and asked to know what officers were on duty at the time if the video was not available. RP at 6. After consulting the infraction report, which indicated that Ashelman was not infracted for anything in the living unit or the walkway to the medical unit, the hearing officer concluded it would not be appropriate to get witness statements from all officers on duty. Additionally, there was no camera in the medical area where the infraction occurred, so there was no footage to review. The hearing officer told Ashelman he would not be able to get witness statements from the entire shift, but reiterated that "[i]f you have names I can get you witness statements. Without names I can't get you witness statements." RP at 6.

Ashelman insisted he had a right to the witness statements and told the hearing officer he would file a PRP and overturn the proceeding. When the hearing officer tried to proceed, Ashelman declined to participate further and walked away.

The hearing reconvened in the afternoon without Ashelman present. The hearing officer found Ashelman guilty under WAC 137-25-030(663) of using physical force, intimidation, or coercion against any person. He based his decision on the written testimony in the incident reports, specifically the three staff witnesses' account of Ashelman "displaying behavior that was intimidating in nature in an effort to coerce medical staff into giving into his demands for narcotics." Resp. of DOC, Ex. 1, Attach. F.

5

Ashelman was sanctioned with 7 days' segregation with credit for time served and 10 days of cell confinement upon return to the general population. He appealed and was denied relief on September 1, 2019.

*Later Proceedings*

Ashelman filed this PRP on April 20, 2020, challenging his guilty findings on violations of WAC 137-25-030(507) and (663) in infraction group number (IGN) 48 and 49, respectively. After filing the petition, the Department reviewed the challenged infraction in IGN 48 and expunged it on March 19, 2021. The loss of good conduct time was reduced from a loss of 150 days to a loss of 45 days based on the remaining two infractions.

ANALYSIS

CHALLENGE TO THE WAC 137-25-030(507) GUILTY FINDING

DOC contends the expungement of Ashelman's WAC 137-25-030(507) infraction in IGN 48 renders the challenge to that infraction moot. We agree.

DOC expunged this infraction on March 19, 2021. While the Court of Appeals has exclusive jurisdiction of Ashelman's PRP, court rules do not prevent DOC from providing an alternative remedy. *In re Pers. Restraint of Higgins*, 152 Wn.2d 155, 162-63, 95 P.3d 330 (2004). Expungement effectively and adequately addresses Ashelman's

6

challenge to this infraction. *Id.* This court can no longer provide effective relief and any issue with respect to this infraction is now moot. *In re Cross*, 99 Wn.2d 373, 376-77, 662 P.2d 828 (1983). Accordingly, we dismiss Ashelman's petition as to the WAC 137-25-030(507) infraction in IGN 48.

CHALLENGE TO THE WAC 137-25-030(663) GUILTY FINDING

Ashelman contends he was denied his due process right to call witnesses and present documentary evidence at the hearing for the WAC 137-25-030(663) infraction. We disagree.

In a PRP, the petitioner must generally show he is restrained under RAP 16.4(b) and that the restraint is unlawful under RAP 16.4(c). *In re Pers. Restraint of Grantham*, 168 Wn.2d 204, 212-13, 227 P.3d 285 (2010). A petitioner is under a "restraint" if he is confined because of a judgment or sentence in a criminal case. RAP 16.4(b). The restraint is unlawful if "[t]he conditions or manner of the restraint of petitioner are in violation of the Constitution of the United States or the Constitution or laws of the State of Washington" or if "[o]ther grounds exist to challenge the legality of the restraint of petitioner." RAP 16.4(c)(6)-(7). The petitioner bears the burden of proving, by a preponderance of the evidence, that his restraint is unlawful. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 814, 792 P.2d 506 (1990).

7

Prison disciplinary hearings are governed by chapter 137-28 WAC. These administrative regulations qualify as "laws of the State of Washington" under RAP 16.4(c)(6). *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 149 n.6, 866 P.2d 8 (1994). Under WAC 137-28-285(1), an offender has rights including a "fair and impartial hearing" and to "[c]all witnesses and present documentary evidence, though the hearing officer may exclude witnesses/evidence deemed irrelevant, duplicative, or unnecessary." Under WAC 137-28-300(1), "[t]he hearing officer shall ensure that the offender's rights are protected throughout the hearing." However, under WAC 137-28-300(5), "[i]f an offender's behavior disrupts the hearing, he/she may be removed and the hearing will continue on the record in the offender's absence."

When a petitioner seeks relief from discipline imposed as a result of a prison disciplinary hearing, a court "will reverse a prison discipline decision only upon a showing that it was so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding so as to work to the offender's prejudice." *Grantham*, 168 Wn.2d at 215. An arbitrary and capricious action is a "'willful and unreasoning action, without consideration and in disregard of facts and circumstances.'" *In re Pers. Restraint of Reismiller*, 101 Wn.2d 291, 296, 678 P.2d 323 (1984) (quoting *Pierce County Sheriff v. Civil Serv. Comm'n*, 98 Wn.2d 690, 695, 658 P.2d 648 (1983)).

8

A prison disciplinary proceeding is not arbitrary and capricious if the inmate was afforded the applicable minimum due process protections and the decision was supported by at least some evidence. *In re Pers. Restraint of Anderson*, 112 Wn.2d 546, 549, 772 P.2d 510 (1989); *In re Pers. Restraint of Gronquist*, 138 Wn.2d 388, 396, 978 P.2d 1083 (1999). Minimum due process requires that the inmate: "(1) receive notice of the alleged violation; (2) be provided an opportunity to present documentary evidence and call witnesses when not unduly hazardous to institutional safety and correctional goals; and (3) receive a written statement of the evidence relied upon and the reasons for the disciplinary action." *Gronquist*, 138 Wn.2d at 396-97.

Here, Ashelman focuses on the second of these three requirements. He argues he was denied the opportunity to present witness statements because DOC refused to identify possible witnesses to the incident.

We first note that Ashelman was not denied the right to present witness statements. Rather, he had no witness statement to present because DOC refused to identify possible witnesses.

We do not view the minimal due process requirements outlined in *Gronquist* as requiring DOC to always identify possible witnesses. Appointed counsel provides no authority to support such a requirement. When a party cites no authority, we may assume

that counsel, after diligent search, has found none. *In re Disciplinary Proceeding Against Jensen*, 192 Wn.2d 427, 440, 430 P.3d 262 (2018); *State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978); *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Had Ashelman provided evidence that DOC's witnesses had a motive to lie, could not perceive the incident, or could not correctly recall the incident, our conclusion might be different. Absent a plausible reason to believe that potential witnesses had exculpatory evidence, Ashelman's request for names of all nurses and officers working that shift was a mere fishing expedition. *See Lennear v. Wilson*, 937 F.3d 257, 269-74 (4th Cir. 2019) (discussing correctional facility's responsibility to assist prisoner in obtaining evidence "that is potentially exculpatory or otherwise likely to assist an inmate in mounting a defense").

Ashelman, acknowledging there to be no authority directly on point, argues that requiring DOC to identify possible witnesses is a requirement that can be inferred from *In re Pers. Restraint of Malik*, 152 Wn. App. 213, 215 P.3d 209 (2009). We disagree.

In *Malik*, an inmate received a serious infraction for introducing a controlled substance into the facility through the mailroom. *Id.* at 215. The infraction report, prepared by the investigating officer, described how the contraband was found in a

package in the mailroom, and how she had heard Malik's voice on the telephone asking

when his "'get well package'" would arrive. *Id.* at 215-16. At the hearing, Malik

requested several items, including a copy of the recording of the telephone conversation

to review and witness statements he had requested the investigating officer to obtain.

The hearing officer, without explanation, denied Malik's requests. The record indicated

that one inmate submitted an exculpatory statement to the investigating officer. We

concluded that Malik's due process rights were violated, noting that minimum due

process required the hearing officer to state proper reasons for limiting the evidence,

"either at the time of the hearing or thereafter." *Id.* at 220.

*Malik* is distinguishable. In *Malik*, there was identified evidence that Malik was

not permitted to review—the recording; and evidence that Malik was not permitted to

present—an inmate's witness statement. The hearing officer presented no explanation for

its rulings. In contrast, here, the hearing officer did not deny Ashelman the right to

review evidence or to present a witness statement.

We conclude that Ashelman was afforded minimum due process in his prison disciplinary hearing, and we dismiss his personal restraint petition.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____   _____
Pennell, C.J.                            Staab, J.