

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | |
| | ) | No. 40926-1-III |
| BROCK MARCHEL | ) | |
| | ) | |
| Petitioner, | ) | UNPUBLISHED OPINION |

STAAB, C.J. — Brock Marchel filed a personal restraint petition (PRP) seeking

relief from a department of corrections (DOC) disciplinary decision finding him guilty of

a serious infraction based on a positive urinalysis test for unauthorized drugs. He argues

the disciplinary proceedings violated his minimum due process rights and there was not

some evidence to support the guilty finding. We disagree and deny his petition.[1]

BACKGROUND

Petitioner Brock Marchel is incarcerated pursuant to a 1998 conviction for first

degree murder. On February 13, 2024, after noticing Marchel engaged in "suspicious

activity" during supervised extended family visitation (EFV), Corrections Officer

Richard Ricker administered a urinalysis (UA) test for the presence of controlled

---

[1] We deny Machel's motion for accelerated review under RAP 18.12. Machel
fails to demonstrate that the ends of justice necessitate accelerated review.

substances. Corrections Officer Scott Hubble assisted with administering the test, with no other witnesses present.

At the time of the test, Marchel read and signed the "Acknowledgment of Urine Testing Time Requirements" form, along with Officers Ricker and Hubble. Officer Ricker then provided Marchel with a sealed UA cup. Marchel observed the cup being unsealed and acknowledged the expiration date on the cup. Marchel provided a urine sample, and the UA cup indicated the sample tested negative for all substances.

Because of the suspicious activity involving Marchel, the shift lieutenant directed that the urine sample be sent to a laboratory for further testing. Accordingly, Officer Ricker applied a tamper seal to the cup containing Marchel's sample, and the sealed sample was sent to an offsite laboratory the same day.

The offsite laboratory received the urine sample with its seal intact. The laboratory tested Marchel's urine sample and reported positive results for THC[2] and norfentanyl.

The DOC received the laboratory results on February 26, 2024. Based on the positive results, DOC charged and served Marchel with a "Disciplinary Hearing Notice/Appearance Waiver" noting a violation of former WAC 137-25-030, serious

---

[2] Tetrahydrocannabinol.

2

violation reason 752 (2023), for "admitting use, or receiving a positive test for use of, an unauthorized drug, alcohol, or other intoxicating substance." Resp't's Br., Ex. 1, Att. D.

Pursuant to DOC policies, Marchel requested a department advisor and witness statements from Corrections Officers Jeffrey Howard, Chinyere Thompson, and Ricker, from a nurse, Odessa McCleary, and from another inmate called "Berube."

Hearing Officer Tony Dunnington denied Marchel's request for a department advisor. In a declaration authored almost one year after the infraction hearing, Hearing Officer Dunnington explained that a department advisor assists inmates at infraction hearings by explaining the procedural process. Hearing Officer Dunnington determined Marchel did not meet the requirements for a department advisor because Marchel had participated in 80 prior infraction hearings, understood the disciplinary process, spoke and understood English, had experience working as a law library clerk, and the underlying facts were not complex.

Hearing Officer Dunnington granted Marchel's requests for witness statements from Officers Howard and Thompson, and from nurse McCleary. However, he denied requests for statements from Officer Ricker and inmate Berube. Hearing Officer Dunnington determined Officer Ricker's statement was unnecessary because Officer Ricker authored the infraction report, which contained his statement, and that inmate Berube's statement was not relevant because Berube was not involved in the process of obtaining the urine sample.

3

Hearing Officer Dunnington presided over Marchel's infraction hearing. Marchel attended the hearing and pleaded not guilty. He testified in his own defense and submitted witness statements from Officers Thompson and Howard, and from nurse McCleary.

Hearing Officer Dunnington began by reviewing Marchel's witness statements. In his witness statement, Officer Thompson stated: "I was present in the Infirmary when Incarcerated Individual Marchel [No.] 788197 tested negative for his urinary analysis in the Infirmary after being pulled out of his EFV visit [sic] for suspicious behavior." Resp't's Br., Ex. 1, Attach. I. Similarly, Officer Howard stated that he was present in the infirmary for the test and heard the nurse state that "the test was negative." Resp't's Br., Ex. 1, Attach. J.

Nurse McCleary stated that she performed a UA on Marchel after a reported potential overdose during Marchel's EFV on February 11, 2024, two days before the UA test at issue in this case, and that the results were "negative for all substances" and that Marchel was returned to his EFV following the result.

Marchel testified that he did not use drugs on the day of the urine test and that the form used to request laboratory confirmation was not completed or signed by him as required. He also noted that Officer Ricker did not complete a chain of custody form, although he acknowledged that chain of custody issues related only to the weight and credibility of the evidence, and not to its admissibility. In addition, Marchel asserted that

4

the laboratory did not test and process the urine sample promptly, noting a gap between collection and testing. Marchel also explained that he requested a statement from inmate Berube to show that he was returned to his EFV after the initial negative test result and normal vital signs, that nothing turned up in a search of his cell, and that he was sick the day following the negative test result.

Following the hearing, Hearing Officer Dunnington found Marchel guilty of violating former serious violation reason 752 and imposed a sanction of 20 days of cell confinement for Marchel's "disregard for institution rules." Resp't's Br., Ex. 1, Attach. K. Marchel did not lose good time credits as a sanction. Marchel signed the disciplinary hearing minutes and findings, acknowledging receipt of the decision.

Marchel appealed the guilty finding, asserting that the positive laboratory result was due to cross-contamination. He argued his due process rights were violated because neither a chain of custody nor request for laboratory confirmation form were completed.

Associate Superintendent Michael Douglas affirmed the guilty finding, reasoning that because the shift commander requested laboratory testing, Marchel would not have completed a request for laboratory confirmation form and that Marchel's signature was on the laboratory consent document. Associate Superintendent Douglas also found Marchel's appeal did not show that the chain of possession was not maintained.

Marchel then petitioned this court for review.

5

ANALYSIS

Marchel contends the infraction hearing violated his minimum due process rights in three ways. First, he contends Hearing Officer Dunnington denied his request for a department advisor. Second, he argues the guilty finding was not supported by "some evidence" because no chain of custody form or laboratory confirmation form was completed. Third, he contends Dunnington denied his request for a witness statement from inmate Berube and by failing to provide a laboratory confirmation form. The State argues we should dismiss the petition because Marchel does not have a protected liberty interest in prison privileges, he received due process at his disciplinary hearing, and the guilty finding was supported by some evidence. We determine that Marchel's hearing complied with due process and there was some evidence to support the infraction.

The due process clause prohibits deprivation of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. However, "[p]risoners facing discipline are not entitled to the full panoply of constitutional protections afforded defendants facing criminal charges." *In re Grantham*, 168 Wn.2d 204, 214-15, 227 P.3d 285 (2010). This is because, "[p]rison discipline is an essential function of the day to day management of a safe and secure correctional institution." *Id.* at 215.

Instead, we will reverse a prison discipline decision "only upon a showing that it was so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding so as to work to the offender's prejudice." *Id.* A disciplinary action is not arbitrary or

capricious if it meets the minimum due process protections applicable in prison disciplinary proceedings and is supported by "some evidence." *Id.* at 215-16.

Minimum due process protections are satisfied if the inmate "(1) receive[s] notice of the alleged violation; (2) . . . [has] an opportunity to present documentary evidence and call witnesses [(]when not unduly hazardous to institutional safety and correctional goals[)]; and (3) receive[s] a written statement of the evidence relied upon and the reasons for the disciplinary action." *In re Pers. Restraint of Gronquist*, 138 Wn.2d 388, 396-97, 978 P.2d 1083 (1999). The "some evidence" standard is satisfied as long as there is "any evidence" in the record to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985).

As a preliminary matter, we address the State's argument that Marchel was not entitled to minimum due process at the infraction hearing. The State asserts that Marchel's sanction for the infraction was the loss of a prison privilege, which is not considered a protected liberty or property right. The State reasons that since Marchel did not lose a protected right, he was not entitled to due process. We disagree with the State's logic. Because Marchel was charged with a serious infraction, which could result in the loss of good time, minimum due process rights attached "at the time of the hearing." *Gronquist*, 138 Wn.2d at 401.

### A. Department Advisor

Turning to the issues raised by Marchel, he first contends his due process rights were violated when he was denied an advisor. This argument is unpersuasive.

A department advisor is not among the minimum due process protections applicable to prison disciplinary hearings. *See Id*. at 397-98. Rather, appointment of a department advisor is governed by DOC regulation: WAC 137-28-295. Although a department advisor is not constitutionally required, Marchel was entitled to the procedures established by regulation. *Id*. Under WAC 137-28-295, "[a] department advisor may be appointed per department policy to help the incarcerated individual prepare for and participate in the hearing."Before a department advisor is assigned, the hearing officer is required to consider certain factors. WAC 137-28-295. [3]

---

[3] (a) The incarcerated individual's literacy;
(b) The complexity of the issue(s);
(c) The incarcerated individual's overall ability to speak for themselves and adequately present their case;
(d) The individual's mental status, as determined by a mental health professional or other employee with mental health training or experience;
(e) The incarcerated individual's ability to communicate in English; and/or
(f) Any disability that might impair the individual's ability to adequately defend themselves.

Marchel contends Hearing Officer Dunnington failed to consider the required factors before denying his request for department advisor. We disagree.

Hearing Officer Dunnington authored a declaration explaining his rationale for denying Marchel's request for a department advisor, although the declaration was dated almost one year after the infraction hearing. Dunnington determined Marchel did not meet the requirements for a department advisor because Marchel had participated in 80 prior infraction hearings, understood the disciplinary process, spoke and understood English, had experience working as a law library clerk, and because the underlying facts were not complex. On this record, we are satisfied that Hearing Officer Dunnington considered the required factors under WAC 137-28-295 and acted within his discretion when he denied Marchel's request for an advisor.

In reply, Marchel takes issue with the fact that Hearing Officer Dunnington's declaration was authored after the infraction hearing. Citing to *Krier*,[4] Marchel argues that Hearing Officer Dunnington's post hoc declaration violated case law prohibiting consideration of evidence outside the record considered during the infraction hearing. This argument is without merit. *Krier* concerned DOC's attempt to shore up a disciplinary hearing record with new evidence. 108 Wn. App. at 33-35. But here, Hearing Officer Dunnington's declaration was not evidence related to Marchel's

---

[4] *In re Pers. Restraint of Krier*, 108 Wn. App. 31, 29 P.3d 720 (2001).

9

infraction and disciplinary hearing. Rather, it was a declaration of Hearing Officer Dunnington's determination related to Marchel's request for a department advisor pursuant to the DOC's regulations. *Krier* is therefore inapplicable. Moreover, while the WAC requires consideration of various factors, it does not require the hearing examiner to make express findings on the record.

### B. Chain of Custody and Laboratory Consent Forms

Marchel next argues his minimum due process rights were violated because the guilty finding lacked "some evidence" due to the absence of a chain of custody log form and laboratory consent form. The State responds that it was not required to establish a perfect chain of custody and that the laboratory consent form was not required. We agree with the State.

Under DOC Policy 420.380 (VIII)(C), when a urine sample is being sent to the laboratory for testing, the DOC is required to document the chain of custody on a particular form, "DOC 14-038 Drug/Alcohol Test Chain of Custody Log," and to follow the "Processing Specimens for Contracted Laboratory Job Aid." Resp't's Br., Ex. 4, Attach. A.

However, this court has held that deficiencies in chain of custody documentation goes to the weight and reliability of the evidence, not its admissibility. *See In re Pers. Restraint of Doolin*, noted at 99 Wn. App. 1026, slip op. at *2-*4 (2000) (citing *State v. Saunders*, 30 Wn. App. 919, 922, 639 P.2d 222 (1982); *State v. McGinley*, 18 Wn. App.

10

862, 866, 573 P.2d 30 (1977)). Accordingly, in *Doolin*, where the petitioner argued the lack of chain of custody evidence for his urine sample precluded a finding of some evidence supporting a guilty finding, this court held that the only question before it was whether there was some evidence to support the guilty finding. *Id*. Notwithstanding the lack of chain of custody evidence, there was other evidence of guilt before the hearing officer. *Doolin*, slip op. at *3 ("[T]estimony that the sample was labeled, sealed and that seal unbroken at testing, and that the sample tested positive for drugs, is clearly 'some evidence' of a violation.").

The same reasoning applies here. Notwithstanding the lack of a chain of custody log form, the record contains evidence that Marchel's sample was sealed, received by the laboratory with the seal intact, and tested positive for controlled substances. That evidence satisfies the "some evidence" standard.

Marchel's argument regarding the "Request for Laboratory Confirmation" form also fails. Under DOC Policy 420.380 (VIII)(B)(2)(b), when an "onsite test result is positive or abnormal," the inmate "may request confirmation . . . using DOC 14-204 Request for Laboratory Confirmation." Resp't's Br., Ex. 4, Attach. A. But in this case, Marchel's onsite test was negative. Accordingly, the confirmation form was not applicable to his case.

11

## C. Right to Present a Defense

Last, Marchel contends Hearing Officer Dunnington violated his right to present a defense by denying his request for a witness statement from inmate Berube and by withholding the laboratory consent form. Both arguments fail.

The hearing officer had discretion to exclude witnesses that were "irrelevant, duplicative, or unnecessary to the adequate presentation of the incarcerated individual's case." Former WAC 137-28-300(6) (2023); *see also In re Malik*, 152 Wn. App. 213, 220, 215 P.3d 209 (2009) ("While a hearing officer has discretion to limit evidence presented at an infraction hearing, he or she must generally state proper reasons for doing so, either at the time of the hearing or thereafter."). Marchel does not challenge Hearing Officer Dunnington's determination that Berube's proposed statement was irrelevant.

With respect to the laboratory consent form, as explained above, the form was not applicable to Marchel's case. Its absence therefore did not impair his ability to present a defense.

Marchel must show that Hearing Officer Dunnington's decision was arbitrary and capricious because it was unsupported by "some evidence." As discussed above, the

record contains some evidence supporting the guilty finding.  Accordingly, the decision was not arbitrary and capricious.

We deny Marchel's PRP.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Murphy, J.